MARY PEARSON v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES.

(Filed 5 January, 1938.)

1. Insurance § 32c—Termination of employment as used in group policy refers to status of parties rather than contract of employment.

The provision of a group policy that insurance of any employee should terminate upon termination of the employment, except that the employer might elect that employees temporarily laid off, on leave of absence, disabled, or pensioned should be considered in the employment, *is held* to refer to the *status* of the parties rather than any contractual relation, and to cover employees employed from day to day without any contract of employment for any specified period, and when an employee is temporarily laid off, on leave of absence, disabled, or pensioned, the employer, although he might terminate his contractual relationship, may not terminate his *status* as an employee within the meaning of the policy without notice to the employee.

2. Same—Where act of employee terminates employment, he is not entitled to notice of cancellation of certificate under group policy.

The employer had a general rule, of which the employees had actual knowledge, that the employment of any employee should automatically terminate upon sentence of such employee to imprisonment. The employee in question was sentenced to imprisonment, and notice thereof given the employer, and the employee's name was thereupon stricken from the pay roll. *Held:* The employee was not entitled to notice of the termination of the employment and the cancellation of his certificate under a group policy.

3. Same—Provision that employee might convert certificate into life policy does not extend certificate after termination of employment.

The provision of the certificate and the group policy that an employee insured thereunder might obtain an ordinary life policy upon application within thirty-one days after termination of the certificate upon termination of the employment, does not have the effect of continuing the certificate in force for thirty-one days after termination of the employment when the employee does not exercise the option by applying for the life policy or by paying the premiums.

APPEAL by plaintiff from *Hill, Special Judge,* at April Term, 1937, of FORSYTH. Affirmed.

This is a civil action instituted by the plaintiff to recover the sum of $500.00, the face value of a certificate of insurance issued to Edward C. Pearson under a group life insurance policy issued by the defendant to the R. J. Reynolds Tobacco Company. The plaintiff is the beneficiary named in the certificate. There was a judgment of nonsuit entered at the conclusion of all the evidence to which the plaintiff excepted and appealed.

*John D. Slawter and Richmond Rucker for plaintiff, appellant.*
*Manly, Hendren & Womble for defendant, appellee.*

PER CURIAM. There is no substantial controversy about the facts in this case. The defendant issued to the R. J. Reynolds Tobacco Company its group life insurance policy with total and permanent disability provisions, insuring the lives of the employees of said tobacco company. The deceased, Edward C. Pearson, son of the plaintiff, worked continuously for the R. J. Reynolds Tobacco Company from 3 December, 1929, through 17 July, 1936, save and except when he was temporarily absent from his employment for a few days at various times during said period. A certificate of insurance dated 3 December, 1929, was issued to him in the sum of $500.00, payable to the plaintiff as beneficiary upon the death of the said Edward C. Pearson. This certificate was issued subject to the terms and conditions of the master policy.

Edward C. Pearson, the employee, was, on 20 July, 1936, convicted in municipal court of the city of Winston-Salem on the charge of operating a motor vehicle upon the public highways of the State while under the influence of intoxicating liquors. He was on said date committed to jail, to be assigned to work the public roads of said county for a term of six months. On 23 July, 1936, while serving said sentence he died suddenly as the result of sunstroke.

The contract of insurance was entered into by and between the R. J. Reynolds Tobacco Company and the defendant and the said tobacco company paid the premium therefor annually. In turn

the said tobacco company had an arrangement with its insured employees by the terms of which each employee paid monthly a proportionate part of the premium of said master policy in part reimbursement for the amount expended by said. company for said insurance. The deceased paid his installment for the month of July, 1936.

It is agreed that on the morning of 20 July, 1936, said employee did not report for work and his wife informed his foreman that said employee had been arrested and was to be tried on that morning. Later, on the same date, the wife of the deceased advised his foreman that said employee had been convicted and committed to the roads to serve a term of six months. The evidence discloses that thereupon the name of the deceased was erased from the roll of employees of the said tobacco company and that in due course it was reported to the insurance company that he had been dropped from said roll and was no longer an employee of said company. The tobacco company gave the deceased no notice that it had dropped him from the pay roll.

Under the terms of the group policy the insurance of any employee automatically ceased upon termination of his employment with the employer in the classes of employees insured under the policy, without regard to the cause of such termination, "except that the employer may elect that all employees who, while insured hereunder, are temporarily laid off or given leave of absence, or are disabled or retired on pension, shall be considered to be in the employment of the employer during such period, subject to the conditions contained in the total and permanent disability provisions hereof."

The plaintiff contends that it was the duty of the employer to notify the insured under said certificate of the fact that he had been dropped from the pay roll of said company, and that he continued to be an employee within the meaning of the master policy and the certificate until and unless such notice was given. Upon the facts appearing in this record this position cannot be sustained.

It may be conceded that the word "employment" as used in the phrase, "termination of his employment," in the group policy of insurance may be interpreted to refer to the *status* of the employee rather than to any actual contractual relationship existing between the employer and the employee. The policy included employees who were working on a day to day basis without any contract for any specified period of employment. It is well said that such an employee occupies a *status* rather than a contractual relationship. The policy clearly does not use the word "employment" in the sense of a legal contract of employment. It is so drawn as to include employees working under a hiring wholly indefinite as to the term of its continuance. The employment might, therefore, be terminated at any time at the will of the employee or that

of the employer. Nor does the contract apply to employees only when they are actually employed from day to day. This is apparent from the provision that if an employee "is temporarily absent, or is temporarily laid off or is given leave of absence," the employment need not be considered terminated. The word as here used is intended to indicate a continuous right to the stated benefit until the contract relation is terminated by the withdrawal of the employee or discharge by the employer, with notice to the other party. As the situation presented is one rather of the *status* of the employee in relation to his employer than of a contract of employment, the right of the employer at any time at its will to discontinue its contractual relationship to the employee is not conclusive that it might to the same extent terminate his *status* as an employee under the policy without notice to the employee. There is, therefore, sound authority for the position that when an employee is temporarily absent from his employment or is temporarily laid off, or is absent on leave, his relationship as an employee under the terms of the policy cannot be terminated by the employer without notice to the employee. *Deese v. Ins. Co.,* 204 N. C., 214; *Porter v. Assurance Society* (Mo.), 71 S. W. (2nd), 766; *Emerick v. Ins. Co.,* 120 Conn., 60, 105 A. L. R., 413.

The law as declared in these and other similar cases will not avail the plaintiff in the instant case. The decisions in those cases were not based upon the same factual situation. The employee may discontinue his *status* as such by his own act. When he does so there is no necessity of a notice from the employer and none is required. Whether the employer, when the employee discontinues the relationship, must recognize and act upon the changed condition by removing the name of the employee from his pay roll before the rights of the employee under the certificate of insurance are terminated is not presented. For, here, the employer did in fact promptly remove the name of the deceased from its pay roll and notified the insurance company thereof.

Did the deceased employee discontinue his employment with the R. J. Reynolds Tobacco Company so as to terminate his rights under the certificate of insurance? This proposition must be answered in the affirmative.

The evidence discloses that the employer had a general rule that the employment of any one of its employees should automatically terminate upon the sentence of such employee to imprisonment. The deceased employee was advised of this rule on a former occasion when he was arrested and put under a suspended sentence. When he was convicted and committed to the roads to serve the sentence imposed he knew that under the terms of his employment the same automatically ended when he received his sentence. Aside from this, the employee, however in-

voluntarily his act may have been, entered into another employment which would, for the term of six months, require of him his full time, both day and night. He could not serve two masters. He knew that he could no longer answer the call of his former employer and that by his own act his *status* as an employee of the tobacco company had been terminated. Under these circumstances no duty rested upon the employer to notify him that the relationship had been discontinued.

Both the certificate of insurance and the master policy include a provision to the effect that in case of the termination of the employment for any reason whatsoever, while insured thereunder, the employee shall be entitled to have issued to him by the society, without further evidence of insurability, upon application made to the society, and upon the payment within 31 days after such termination of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the society, except term insurance, in an amount equal to the amount of his protection under the policy and certificate at the time of such termination of employment. This provision does not extend the insurance 31 days after the termination of employment. It grants the insured employee a privilege or option under certain conditions therein stipulated. The insured did not exercise this option or privilege by applying for such policy or by paying the required premium. The plaintiff, therefore, has no claim against the defendant by reason of the terms of this provision.

The deceased employee having, by his own act, terminated his *status* as an employee of the R. J. Reynolds Tobacco Company, and the employer having recognized, accepted, and acted upon such termination, the defendant is in no wise liable to the plaintiff upon the certificate sued upon. The judgment of nonsuit is

Affirmed.