MURPHY v. CHRYSLER CORP.

1. INSURANCE—GROUP POLICY—TERMINATION OF EMPLOYMENT—SELECTIVE SERVICE ACT.

Beneficiary under group life insurance policy and certificate was not entitled to recover thereunder where insured who had been ordered to report to his draft board on March 26, 1941, voluntarily quit work with his employer March 21st, and was paid therefor less authorized deduction for insurance for that day on March 24th and died on March 25th where application, certificate and policy each provided that the insurance would terminate upon termination of employment, insured retained his civilian status until death, notwithstanding provi-

sions of selective service act relative to continuation of employment and reinstatement of employee after end of service, there being no requirement therein that the employer pay wages or insurance premiums after termination of employment or that insurer continue insurance without payment of premiums (50 USCA, Appendix, § 308).

2. MASTER AND SERVANT—SELECTIVE SERVICE ACT—CONTINUANCE OF EMPLOYMENT—GROUP INSURANCE—DEATH BEFORE INDUCTION.

The selective service act does not continue the employment status or group insurance of one ordered to report for examination by draft board after he quits his work where he dies before induction (50 USCA, Appendix, § 308).

3. INSURANCE—GROUP POLICY—TEMPORARY LAYOFF—ORDER BY DRAFT BOARD FOR EXAMINATION.

Employee who voluntarily quit his work the day after receiving order to appear for his examination by his draft board, collected his pay less insurance premiums under group policy three days later, and died the following day which was the day before he was ordered to report was not on a temporary layoff or a leave of absence keeping the insurance in force as to him notwithstanding the employer on the first of the month had paid an average monthly premium in advance and did not notify insurer of the employee's death until the middle of the following month (50 USCA, Appendix, § 308).

Appeal from Wayne; Moynihan (Joseph A.), J. Submitted June 11, 1943. (Docket No. 72, Calendar No. 42,422.) Decided October 11, 1943.

Assumpsit by Josephine LaForest Murphy against Chrysler Corporation and Aetna Life Insurance Company of Hartford on a group life insurance policy. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Fremont Sweetwine,* for plaintiff.

*Gerald E. Schroeder,* for defendants.

STARR, J. Plaintiff appeals from a judgment entered on directed jury verdict for defendants.

In October, 1940, upon entering the employ of defendant Chrysler Corporation, plaintiff's son, Charles LaForest, signed the following application for insurance:

"I hereby apply for life insurance in the amount of $2,000, and sickness and accident insurance in the amount of $10, weekly benefit, in accordance with the terms of the group policies issued to my employer; and in consideration of the issuance of this insurance to me I authorize the deduction of $.39 per day from my wages, and I authorize the cancellation of my interest in the insurance and industrial association funds upon termination of my employment by causes other than death or sickness."

In pursuance of such application a certificate was issued to LaForest providing for life insurance in the amount of $2,000 payable to plaintiff as beneficiary, and also for sickness and accident insurance. Such certificate contained the following provision:

"This insurance terminates whenever said member ceases to be an employee of the Chrysler Corporation or upon failure of the member to make the required premium contribution."

The group insurance policy issued by defendant Aetna Company to the Chrysler Corporation, under which LaForest's certificate was issued, provided in part:

"Individual certificates. The company will provide individual certificates which the employer may deliver to each insured employee containing a statement as to the insurance protection to which the employee is entitled and to whom it is payable. * * *

"The insurance of any employee shall automatically cease when the employee fails to make the re-

quired premium contribution, or upon termination
of employment; except that if any employee is ab-
sent on account of sickness or injury, temporarily
laid off, granted leave of absence, pensioned or re-
tired, his insurance shall continue until it is
terminated by the employer."

About March 15, 1941, LaForest was notified by
his local draft board that he had been selected for
military service under the selective training and
service act of 1940 (50 USCA, Appendix § 301 *et
seq.*). About March 20th he was ordered by his
draft board to report March 26th and was advised
that he would be examined and, if accepted, would
be inducted into military service. He voluntarily
quit his employment March 21st, telling his fore-
man that "he would be going into the army."
March 21st was the last day he worked.

On March 24th he went to the Chrysler plant and
said to his foreman, "I am going into the army. I
want to be cleared out immediately." On that date
he surrendered his employee badge, was given a
so-called "tool clearance of employee leaving serv-
ice" and a "left service ticket," and was paid in
full by check dated March 22d for his work to and
including March 21st. His name was removed from
the payroll as of March 21st, and his left-service
ticket was marked "key No. 100" which, a Chrysler
Corporation personnel supervisor testified, meant
"inducted into the United States army under the
selective service law." In computing the net
amount due him, the sum of 33 cents for insurance
was deducted from his gross pay, which, a pay-
master of the corporation testified, paid his insur-
ance to March 21st. The Corporation noted on its
records that LaForest's insurance was cancelled
March 21st, the day he quit.

The terms of the group policy required the Chrysler Corporation to pay an average monthly premium in advance each month, and it appears that such premium for March, 1941, was paid on March 1st. The record also shows that about April 15, 1941, the corporation furnished the Aetna company with a so-called "cancellation form" containing a list or schedule of certain employees whose employment had terminated in March. Such schedule indicated that LaForest's employment had been terminated and his insurance cancelled March 21st.

LaForest died March 25th, the day before he was ordered to report to his draft board. The chief clerk of his draft board stated that, "as far as our records are concerned, Charles William LaForest still retains his civilian status. He was never inducted into the army." Plaintiff's request for payment of the insurance was refused, and on October 14, 1941, she began the present suit. Defendants denied liability on the ground that LaForest's employment was terminated and his insurance cancelled March 21st, prior to his death March 25th. At the conclusion of all proofs, plaintiff's motion for a directed verdict was denied. Defendants' motion for a directed verdict was granted, and judgment was entered.

Plaintiff's motion for a new trial was denied, and she appeals, contending that her deceased son's employment status was not terminated prior to his death and that his absence from work for the purpose of being inducted into the armed forces constituted a temporary layoff within the meaning of the insurance certificate and group policy and a leave of absence within the meaning of the provisions of the selective training and service act. 50 USCA, Appendix § 308, provides in part:

"(a)   Any person inducted into the land or naval forces under this act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect. * * *

"(b)   In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within 40 days after he is relieved from such training and service— * * *

"(B)   if such position was in the employ of a private employer, such employer shall *restore* such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *

"(c)   Any person who is *restored* to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so *restored* without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.''

Plaintiff claims that, under the above-quoted provisions of the selective service act, the employment status of her deceased son continued after he quit work and while he was awaiting induction into the

armed forces. She argues that, as the act requires that the employee be restored to his former position and that during his training and service he "shall be considered as having been on furlough or leave of absence," it was intended to preserve and continue his employment status during his period of military service. Based upon her contention that her son's employment status continued after he quit, she further argues that the Chrysler Corporation had no legal right to cancel his insurance; and that its failure to deduct the full, required weekly premium from his last wages would not terminate his insurance. She also claims that, because the corporation paid the monthly premium for the group policy in advance on March 1st, and because the Aetna company was not notified of the cancellation of her son's insurance until about April 15th, his insurance certificate remained in force and effect for the full month of March.

We cannot agree with plaintiff's contentions and claims. The undisputed testimony shows that her son voluntarily quit his employment March 21st; and that on March 24th he accepted his pay less a deduction of 33 cents, which was sufficient to pay the premium on his insurance certificate only to March 21st. It is clear that his employment terminated March 21st, and the application, the certificate, and the group policy each provided that his insurance would terminate upon the termination of his employment.

The group policy further provided that, if an employee was "temporarily laid off," his insurance would "continue until it is terminated by the employer." The testimony shows that the Chrysler Corporation terminated LaForest's insurance March 21st. The same form of policy involved in the present case was considered in *Klat* v. *Chrysler*

*Corp.*, 285 Mich. 241; *England* v. *Aetna Life Ins. Co.*, 285 Mich. 302; and *Klym* v. *Aetna Life Ins. Co.*, 305 Mich. 508, and our decisions in such cases sustain defendants' claim that LaForest's employment and his insurance both were terminated March 21st.

To hold with plaintiff's contention that the above-quoted provisions of the selective service act continued the employment status of her son after he quit, and that his insurance continued in force while he awaited induction and during his contemplated military service, would require his employer, the Chrysler Corporation, to pay the premiums and maintain his insurance during such period. We are satisfied that the congress did not intend such result. The act does not require the employer to pay either wages to, or insurance premiums for, an employee after he quits and during the period he awaits induction or during the period of his training and service. Nor does the act require defendant Aetna company to continue his insurance during such period without payment of premiums. *Szymanski* v. *John Hancock Mutual Life Ins. Co.*, 304 Mich. 483 (145 A. L. R. 947).

Section 308, above quoted in part, provides in effect that any person inducted into the armed forces, upon completing his training and service, shall be entitled to a certificate to that effect, and that his employer shall *restore* him "to a position of like seniority, status, and pay," and further that any person who *is restored* to his former position "shall be so *restored* without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer." Such provision of the act regarding insurance or other benefits applies only to a person holding a certificate of training and service who has been restored to his former position. As plaintiff's son was never inducted into

the armed forces, never received a certificate of service, was dead and could never be restored to his former position, the provisions of the act cannot be held to continue his employment status or his insurance after he quit March 21st. Under the facts shown by the record, his absence from work after he quit cannot be construed as either a temporary layoff or a leave of absence.

The fact that the Chrysler Corporation was required to pay an average monthly premium for its group insurance in advance on March 1st, and that it did not notify the insurance company of the termination of LaForest's employment and of the cancellation of his insurance until about April 15th, would not operate, under the facts and circumstances of the present case, to keep his insurance in force after he quit his employment and after the expiration of the period for which his premium was paid. In view of our conclusions, other questions presented do not require consideration.

This decision shall not be construed as affecting the rights and employment status, under the above-quoted provisions of the selective training and service act, of an employee who leaves a position, is inducted into the armed forces, receives a certificate of the completion of his training and service, and makes application for reemployment.

The judgment for defendant is affirmed, with costs.

Boyles, C. J., and Chandler, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.