MAMIE P. LINEBERGER v. SECURITY LIFE & TRUST COMPANY AND PILOT FREIGHT CARRIERS, INC.

(Filed 12 December, 1956.)

1. **Insurance § 32c—Facts agreed held to disclose final discharge terminating certificate under group policy.**

   Where the certificate under a group policy states that upon termination of the employment the insurance of the employee under the group policy ends, and under the agreed statement of facts it is disclosed that the employee was discharged from his regular employment over a month prior to his death, and his name removed from the employer's insurance records, that at no time thereafter did his name appear on such records, and that no premium was paid to insure his life thereafter under the group policy, the beneficiary in the certificate may not recover thereon, notwithstanding

that the employee worked thereafter at irregular intervals for the employer for a total of sixteen days during the month and two-thirds following his final discharge, there being nothing in the findings of fact to support the contention that his final discharge as a regular employee was a temporary lay-off.

**2. Same—**

Provision in a certificate under a group policy that upon termination of employment the employee might apply within a thirty-one day period for a policy of life insurance with insurer in any one of the forms customarily issued, except term insurance, does not have the effect of continuing the certificate in force after termination of the employment in contradiction of the express terms of the certificate, but merely gives the employee the right to apply for, in accordance with terms stipulated, and have issued a policy of insurance.

**3. Same—**

Where certificate under a group policy sets forth in plain language that insurance thereunder should terminate upon termination of the employment and that the insured employee should have right to apply for a regular policy within thirty-one days after termination of the employment, neither insurer nor the employer is required to give the employee notice that termination of employment terminates the insurance or notice of his privilege of conversion.

**4. Same—**

The employer paying premiums under a group policy is not the agent of the insurer, and error of the employer in reporting to insurer that a certain person was an employee when in fact the relationship had been terminated by final discharge, does not bind insurer.

**5. Same—**

Where, by the plain and unambiguous terms of a group certificate, insurance as to the employee thereunder is terminated when employment is terminated, such terms fix the period of coverage under the certificate and will be interpreted and enforced according to the terms of the policy in their usual, ordinary and accepted meaning.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Patton, Special Judge,* June Civil Term 1956 of FORSYTH.

Civil action to recover the sum of $3,000.00, the face value of a certificate of insurance issued to Jasper C. Lineberger under a group life insurance policy issued by Security Life & Trust Company to Pilot Freight Carriers, Inc.

The parties waived a jury trial, agreed upon a statement of facts arising upon the pleadings, and consented that the judge could enter judgment thereon.

The judge rendered judgment that the plaintiff have and recover nothing from Security Life & Trust Company, and dismissed the action.

Plaintiff excepted to the judgment, and appealed.

*Weston P. Hatfield for Plaintiff, Appellant.*

*Womble, Carlyle, Sandridge & Rice for Security Life & Trust Company, Defendant, Appellee.*

PARKER, J. On 8 March 1953 Security Life & Trust Company issued to Pilot Freight Carriers, Inc., a motor vehicle public carrier, its Group Policy No. G-198, which was a Non-Contributory Policy with all premiums thereon paid monthly by Pilot Freight Carriers, Inc., and no part thereof paid by any of its employees covered by said policy. Under the arrangement between them the Pilot Freight Carriers, Inc. was a self-administrative unit, and it kept and maintained in its office a record showing the names of its employees covered by the policy at any given time. Security Life & Trust Company had the right at will to inspect this record, or any other records in the office of Pilot Freight Carriers, Inc. pertaining to the policy of Group Insurance and to the employees covered by it. Pilot Freight Carriers, Inc. was required, and did make a monthly report to Security Life & Trust Company on forms furnished by it, entitled "Premium Statement for Group Life Insurance," which report contained the number of its employees covered by the policy, the amount of insurance in force on the lives of its employees under the policy as of the given insured date, the number of new employees insured since the last due-date, employees terminating insurance since last due-date, and other pertinent information.

At the times mentioned in the pleadings Pilot Freight Carriers, Inc. maintained a freight terminal in Forsyth and Mecklenburg Counties. On 30 June 1952 Jasper C. Lineberger entered the employment of Pilot Freight Carriers, Inc. as a freight checker at its terminal in Forsyth County, and was discharged on 31 January 1953. He was rehired on 26 May 1953, and worked as a full-time employee as a freight checker until 31 July 1954. On 31 July 1954 his employment was terminated by Pilot Freight Carriers, Inc., and he, together with several other employees, was discharged, on account of a lack of work for them at the Forsyth County Terminal. The effective date of his discharge was 1 August 1954. He was offered a job at its terminal in Charlotte, which he declined to accept. When he was discharged on 31 July 1954, he received his final pay cheque, and was notified there was no further work for him at the Forsyth County Terminal.

When he was discharged on 31 July 1954, Pilot Freight Carriers, Inc. removed his name from its insurance record showing the names of all its employees covered by the Group Policy, and at no time thereafter

did his name appear on its insurance records showing the names of its employees covered by the Group Policy. Pilot Freight Carriers, Inc. paid no premium for coverage under said policy of group insurance on his life for either the months of August or September 1954. The last premium paid by it for coverage under the policy of group insurance on his life was for the month of July 1954, the due-date of which was 1 July 1954.

For the due-date of 1 August 1954 Pilot Freight Carriers, Inc. submitted to Security Life & Trust Company on 6 August 1954 the "Premium Statement for Group Life Insurance," which showed Jasper C. Lineberger as one of its 48 employees, and it delivered to Security Life & Trust Company its cheque for $1,153.22 in payment of the premium due for August 1954.

When Jasper C. Lineberger was rehired on 26 May 1953, there was issued to him a certificate in accord with the terms of the Group Policy showing that he was insured under the Group Policy. The certificate named plaintiff as beneficiary. Pursuant to a rider attached to the Group Policy on 1 September 1953 the amount of insurance under the certificate was increased to $3,000.00.

When he was discharged on 31 July 1954, he was not notified by his employer or by Security Life & Trust Company that the insurance on his life under the Group Policy was being terminated, or that the same could be converted as provided by the certificate. Neither he, nor Pilot Freight Carriers, Inc., nor anyone, paid any sum whatsoever to Security Life & Trust Company on the premium on the policy of Group Insurance for coverage thereunder on his life for the month of August 1954, or for any month thereafter.

For the work done by him for Pilot Freight Carriers, Inc., prior to 1 August 1954, he was paid weekly by cheque, and was carried on the regular payroll of the company as a full-time employee. After his discharge on 31 July 1954, he worked at irregular intervals during August and September 1954 for Pilot Freight Carriers, Inc. for a total number of 16 days prior to his death on 20 September 1954. During this period of irregular work his name was not carried on the insurance records or on the employment records kept by Pilot Freight Carriers, Inc., showing the names of its regular and full-time employees, who were covered by the Policy of Group Insurance during the months of August and September 1954, and he was paid in cash from the petty cash fund.

A copy of Group Policy No. G-198 was attached to the agreed statement of facts, and made a part thereof. This policy provides: "TERMINATION OF INSURANCE. The insurance of any employee insured hereunder shall automatically cease: . . . (2) *On the date of the termination of his employment.* Termination of employment for the purposes

of insurance hereunder, shall mean cessation of active work as an employee, except . . ." There are two exceptions: one, if an employee's cessation of active work is caused by sickness, injury or retirement, and two, if an employee is on leave of absence or temporary lay-off. The two exceptions are not relevant here.

It seems evident that the words "termination of his employment" within the terms of the policy refer to the *status* of the employee rather than to a contractual relationship, and must mean a complete severance of the relationship of employer and employee, of which the employee has knowledge, by positive act on the part of either or both. It is such a termination of employment as will make effective all parts of the insurance contract. This is apparent from the exception that "if an employee's cessation of active work is caused by sickness, injury or retirement, his employment may be deemed to continue until premium payments for such employee's insurance are discontinued by the employer." *Pearson v. Assurance Society,* 212 N.C. 731, 194 S.E. 661; *Emerick v. Conn. Gen. Life Ins. Co.,* 120 Conn. 60, 179 A. 335, 105 A.L.R. 413; *Beecey v. Traveler's Ins. Co.,* 267 Mass. 135, 166 N.E. 571; *Colter v. Traveler's Ins. Co.,* 270 Mass. 424, 170 N.E. 407; *Peters v. Aetna Life Ins. Co.,* 279 Mich. 663, 273 N.W. 307; 44 C.J.S., Insurance, p. 1265; Appleman's Insurance Law and Practice, Vol. 1, sec. 122.

The agreed statement of facts sets forth that there was a complete severance of the relationship of employer and employee between Pilot Freight Carriers, Inc. and Jasper C. Lineberger by his discharge from employment on 31 July 1954, effective 1 August 1954, at which time he received his final pay cheque. He knew he was discharged from employment because of lack of business at its Forsyth County Terminal, and when he was offered employment at its Mecklenburg County Terminal, he refused to accept it. When he was discharged on this date, Pilot Freight Carriers, Inc. removed his name from its insurance records showing that he was an employee covered by the Group Policy, and at no time thereafter did his name appear on such records. From then until his death on 20 September 1954 no premium was paid by anyone to Security Life & Trust Company for coverage on his life under the Group Policy. From the agreed statement of facts it is clear that the report made to Security Life & Trust Company by Pilot Freight Carriers, Inc. on 6 August 1954 that he was an employee on 1 August 1954 was made in error. His termination of employment on 31 July 1954 was such a termination as to make effective all parts of the insurance contract. Plaintiff's contention that Jasper C. Lineberger's discharge on 31 July 1954 was a temporary lay-off finds no support in the agreed statement of facts. As Jasper C. Lineberger's discharge on 31 July 1954 was a complete severance of the relationship of employer

and employee existing between them, the employer had no right to continue the insurance as to him. "Group insurance policies are issued to the employer to insure employees. One who is not an employee is not insurable." *Hawthorne v. Met. Life Ins. Co.*, 285 Mich. 329, 280 N.W. 777.

The Group Insurance Policy provides: "EMPLOYEES ELIGIBLE. . . . (b) Each employee in the employ of the Employer after the Effective Date of this policy shall be eligible for insurance upon the completion of one month of continuous service." Jasper C. Lineberger during the irregular intervals in August and September 1954 that he worked for Pilot Freight Carriers, Inc. for 16 days was not eligible for insurance under the Group Policy.

The certificate of insurance issued to Jasper C. Lineberger on 26 June 1953, after he was rehired on 26 May 1953, is attached to the agreed statement of facts, and made a part thereof. This certificate issued to him provides that it is subject to the terms and conditions of Group Policy No. G-198, and contains this provision:

> "CONVERSION. Upon termination of insurance under the group life policy, because of termination of employment with the Employer, any employee shall be entitled to have issued by the Insurance Company, without medical examination, a policy of life insurance in any one of the forms customarily issued by the Insurance Company, except term insurance, upon written application made to the Home Office of the Insurance Company within thirty-one days after the termination of employment and upon payment of the premium applicable to the class of risk to which the employee belongs and to the form and amount of policy at the employee's then attained age. Any individual policy issued in accordance with this provision shall become effective at the expiration of the thirty-one day period during which the employee was entitled to make application for the individual policy. The amount of the individual policy shall not exceed the amount of the employee's life insurance in force at the beginning of such thirty-one day period."

Jasper C. Lineberger's termination of employment was on 31 July 1954, and he died on 20 September 1954. There is nothing in the agreed statement of facts to indicate that he made any effort to use the conversion privilege set forth in plain English in his certificate of insurance, which inured to his benefit. What was said in *Pearson v. Assurance Society, supra,* is pertinent here: "It (a conversion right in the certificate of insurance and master policy) grants the insured employee a privilege or option under certain conditions therein stipulated. The insured did not exercise this option or privilege by applying for such

policy or by paying the required premium. The plaintiff, therefore, has no claim against the defendant by reason of the terms of this provision." See also: Appleman's Insurance Law and Practice, Vol. 1, p. 115.

The certificate of insurance issued to Jasper C. Lineberger plainly sets forth that upon the termination of his employment with Pilot Freight Carriers, Inc. his insurance as an employee under the Group Policy ended. The policy does not require that notice that termination of his employment terminated his insurance under the Group Policy, or that notice of his privilege of Conversion, be given to him by either employer or the insurer. Group Policy No. G-198 was a Non-Contributory Policy with all premiums thereon paid monthly by Pilot Freight Carriers, Inc., and no part thereof paid by any of its employees covered by the policy. Jasper C. Lineberger was charged with knowledge of those terms, and neither the insurer nor the employer had any duty to apprise him that he was not covered by the policy after his discharge as an employee, of which discharge he had full knowledge, or that he had a privilege of Conversion. *Beecey v. Traveler's Ins. Co., supra; Thull v. Equitable Life Assurance Society,* 40 Ohio App. 486, 178 N.E. 850; *Equitable Life Assurance Society of U. S. v. Yates,* 288 Ky. 309, 156 S.W. 2d 128; *Metropolitan Life Ins. Co. v. Thompson,* 203 Ark. 1103, 160 S.W. 2d 852; *Adkins v. Aetna Life Ins. Co.,* 130 W. Va. 362, 43 S.E. 2d 372; 44 C.J.S., Insurance, p. 1265; Appleman's Insurance Law and Practice, Vol. 1, pp. 108-109.

In *Adkins v. Aetna Life Ins. Co., supra,* it is said: "As the conversion privilege clause of the policy, for the reasons already stated, gave the insured nothing more than the right to obtain a converted policy upon stated conditions within the specified period after the termination of his employment and did not extend his insurance under the policy beyond the end of the policy month in which his employment terminated, no notice by his employer that his employment had terminated could restore his insurance under the policy or serve to keep it in force or effect. *Pearson v. Equitable Life Assurance Society of United States,* 212 N.C. 731, 194 S.E. 661; *Duval v. Metropolitan Life Ins. Co.,* 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276; *Murphy v. Chrysler Corporation,* 306 Mich. 610, 11 N.W. 2d 261; *Metropolitan Life Ins. Co. v. Hawkins,* 156 Va. 720, 158 S.E. 877; *Costelle v. Metropolitan Life Ins. Co.,* Mo. App., 164 S.W. 2d 75; *Equitable Life Assurance Society of United States v. Yates,* 288 Ky. 309, 156 S.W. 2d 128; *English v. Metropolitan Life Ins. Co.,* 300 Mass. 482, 15 N.E. 2d 804; *Kowalski v. Aetna Life Ins. Co.,* 266 Mass. 255, 165 N.E. 476, 63 A.L.R. 1030."

It is written in *Haneline v. Casket Co.,* 238 N.C. 127, 76 S.E. 2d 372: "It was said in *Dewease v. Insurance Co.,* 208 N.C. 732, 182 S.E. 447, 'the employer in a group insurance policy is not ordinarily the agent of the insurance company.' "

*Deese v. Ins. Co.*, 204 N.C. 214, 167 S.E. 797, relied on by the plaintiff is distinguishable. In that case Oscar J. Deese had agreed to pay his employer the sums required to keep the Group Policy in force as to him. The employer had not renewed the Group Policy. In reliance upon the provisions of the Group Policy, Deese continued to pay the sums which he had agreed to pay after the Group Policy had expired, but within the grace period of 31 days allowed by the policy for the payment of the renewal premium. The jury found by its verdict that Deese was an employee of the Carolina Nash Company at the time of his death. The facts are quite different from the facts in the instant case. The other cases relied upon by appellant from other jurisdictions are distinguishable.

The Group Policy by express terms provided that Jasper C. Lineberger's insurance as an employee ended when his employment terminated, and these express terms fixed his coverage period. These terms are plain, clear and unambiguous, and of the essence of the contract, and they will be interpreted and enforced according to the terms of the policy in their usual, ordinary and accepted meaning. *Haneline v. Casket Co., supra; Motor Co. v. Ins. Co.*, 233 N.C. 251, 63 S.E. 2d 538. "It is our duty to construe policies of insurance as written, and not to rewrite them." *Scarboro v. Ins. Co.*, 242 N.C. 444, 88 S.E. 2d 133.

Jasper C. Lineberger's insurance under the Group Policy ended, when he was discharged on 31 July 1954. There is nothing to show that he tried or intended to exercise his conversion privilege. Security Life & Trust Company is not liable in any way to plaintiff on the certificate sued upon. The judgment is correct, and is

Affirmed.

JOHNSON, J., not sitting.