Annie DUBOISE, Dewey D. Presson, Bobby Duboise, a Minor, by and Through his Next Friend and Natural Guardian Annie Duboise, and Charles Duboise, a Minor, by and Through his Next Friend and Natural Guardian Annie Duboise, Plaintiffs-Appellants,

v.

RAILWAY EXPRESS AGENCY, INC., a Corporation, Voss Truck Lines, Inc., a Corporation, and, Sanford O. Pettigrew, Defendants-Respondents.

No. 51562.

Supreme Court of Missouri, Division No. 2.

Dec. 12, 1966.

Murphy & Roche, Byron A. Roche, St. Louis, and James Q. Brown, Clayton, for appellants.

Carter, Fitzsimmons and Brinker, Paul E. Fitzsimmons, Clayton, for respondent, Railway Express Agency, Inc.

F. X. Cleary, Daniel T. Rabbitt, Jr., Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondents, Voss Truck Lines, Inc., and Sanford O. Pettigrew.

BARRETT, Commissioner.

On December 6, 1961, Golden Duboise, age 45, driving a 1956 Buick sedan, left Mesa, Arizona, en route to his wife's family in Granite City, Illinois. Two days later, on December 8, 1961, between 4:00 and 5:00 o'clock in the afternoon his Buick automobile was involved in a collision with one and the plaintiffs claim two trucks on U. S. 66 east of Waynesville, 0.2 miles east of Highway 66 and Route V in Pulaski County. Golden left Mesa at 9:30 or 10:00 o'clock on December 6 and sleeping sitting up in the automobile at intervals had driven night and day more than 1600 miles. In the Buick with Golden in the front seat were his wife's uncle, Dewey Presson, his son Bobby, age 20 when the case was tried beginning on February 15, 1965, and in the back seat Charles Duboise, age 16 in 1965, and Golden's wife Annie, age 38. It began snowing in Oklahoma and by the time the party arrived at Waynesville "it was more snow and sleeting all mixed together" and as to the condition of the pavement Golden said, "I would call it snow and slush." U. S. Highway 66 at the point of collision is a four-lane pavement divided by a dirt and grass median strip. Golden traveling east at a speed of 30 miles an hour says that he had followed a green truck "with two things in the corners of the doors" (red diamonds) for some distance and as it started up a

long hill he "intended to go around it" and increased the speed of his Buick to about 35 miles an hour and then he said, speaking of the green truck (presumably a Railway Express Agency truck), "It was snowy and slushy, I would call it, and when I got beside it, it came over on one side and hit my car and went wacking, and it hit again, two times, that quick." He said that his car was "hit on the side near the back" and then "went out of control and went to the left and crossed this here grass (the median strip) over into the other lane and turned around and come back to this grass and mud, and that big truck hit it." This was his way of saying that as his Buick went out of control, crossed the median strip and skidded around in the wrong traffic lane a Voss truck traveling west struck the left side of the Buick knocking it back and across the median strip.

Lex Channing Smith, the driver of a Railway Express Agency truck, from his rearview mirror, saw the Buick "fishtailing" on the slick pavement and "it looked like a semi-truck or something was crosswise of the road behind me." But Lex heard no metallic sound, as of a truck and automobile touching, felt no jolt or movement of his truck. In short the plain implication of his testimony was that there was no contact or touching, let alone a collision, of his truck with Golden's Buick. The Voss equipment, a tractor-trailer driven by Sanford O. Pettigrew, age 52 with 28 years' experience operating heavy equipment, traveling west at 25 miles an hour, he says, on "very slick" pavement, downgrade, saw Golden's Buick "come across the center median" before he could apply his brakes: "I couldn't avoid it at all," and the left front fender of his tractor struck the skidding Buick in the left side. Everyone in the Buick sustained some injury, some severe and some slight.

The occupants of the Buick, except Golden, filed separate suits to recover damages for their personal injuries. The defendant-respondents are Railway Express Agency, Voss Truck Lines and its driver, Petti-

grew. The four separate actions were consolidated and tried in the City of St. Louis. At the conclusion of a four-day trial a jury returned a verdict in favor of all three defendants and the plaintiffs have appealed. It is necessary to an understanding of the determinative issue involved upon this appeal to thus briefly detail the background circumstances.

Undeniably the out-of-control Buick crossed over the median strip into the wrong traffic lane and was struck by the Voss tractor-trailer as it proceeded west in its proper traffic lane. But whether the Buick at a speed of 50 miles an hour "fishtailed" on the slick pavement and went out of control due to Golden's negligent conduct as the defendants claimed and as the jury found or whether it was lightly but twice sideswiped by the Railway Express truck and thus knocked out of control as the plaintiffs claimed was the doubtful, hotly contested and probably determinative issue. It may have been determinative because aside from the mere fact of whether there was a collision the issue also involved a finding as to the credibility of virtually all the witnesses.

In 1961 Railway Express Agency "had a run" from the post at Fort Leonard Wood to meet trains "No. 4 and 9" at Newburg. Lex Smith was the "chauffeur-clerk" on that run. On December 8, 1961, he left Fort Leonard Wood for Newburg, a distance of 26 miles, at 3:45 driving a green 1961 "Chevrolet cab over cowl" truck. It was snowing, the pavement was "packed ice and snow," and Lex was traveling at a speed of 25 miles an hour in the outermost eastbound traffic lane and 50 or 60 feet ahead there was a vehicle and following him "some cars." He testified, "(t)here was a car approximately 50, 60 feet behind me and when he pulled out, I presume to pass or something, anyway when I saw him he was what I designate 'fishtailing;' the back end was going backwards and forwards" in the left or inside traffic lane. All this Lex saw from his left rearview mirror. Then Lex said, after he saw this

automobile (Golden's Buick), "I had to watch the road. You glance in your mirror and then look forward, because the road was slick." But he said that he heard no sound, felt no jolt or movement of his truck, but continued on up the hill and when "I glanced in my mirror again, and it looked like a semi-truck or something was crosswise of the road behind me." Lex drove on up to the top of the hill and stopped 150 to 200 yards east and walked back to the Voss truck and Golden's Buick and before leaving the scene gave his name to a highway patrolman. He did not report the occurrence to his office or superiors in Kansas City and did not inspect his truck for any marks or damage until 20 or 30 days later when his Kansas City office asked for a report. In this Lex was corroborated by an army sergeant and his wife who were traveling east on the highway en route to their home in Rolla. They saw the Buick at a speed of 40 to 50 miles an hour "fishtailing" on the slick pavement, saw it cross the median strip and saw the Voss truck hit it. But they saw no other vehicle within "fifty feet east of this Duboise (Golden) automobile."

On the other hand, while at the time of the occurrence Golden was unable to identify the "green truck" as being a Railway Express Agency vehicle he definitely stated that as he pulled out to pass the truck it "came over" and hit his Buick twice. He could only identify the truck as "green" and described two objects, red diamonds, painted on its rear doors. Likewise his wife in the rear seat described a green truck ahead of them that "had red diamonds on the back doors" and she said, "We had got out about, I would say, a little more than halfway up on the truck when the truck just came over next to the side of our car and bumped the front fender up near the door, and then it just jumped back and bumped the back of the car somewhere near the back." The sons, Charles and Robert, also testified to the bumping collision of a green truck with red diamonds.

The plaintiffs' witnesses said that there were no dents in the chrome or any marks of green paint on the Buick's right side prior to the collision. Photographs of the Buick taken on January 17, 1962, revealed, according to plaintiffs' witness, "at a point thirty and one-half inches above the ground, there was a chrome molding strip (at the rear wheel), a little dirty, but it had a tiny green mark. * * * This is the strip, with a little smudge, not quite as clear, but it is still there. * * * There was just a little spot of green paint." A highway patrolman saw the marks of green paint on the Buick "immediately after this accident" and again on January 17 when the photographs were taken.

No one at the scene of the accident examined the Railway Express truck and the highway patrolman did not mention it in his report. On cross-examination of the patrolman, incidentally, Railway Express counsel introduced in evidence a number of photographs of green trucks belonging to several companies with various red objects painted on the vehicles. On direct examination Lex Smith said that 20 or 30 days after the occurrence his boss in Kansas City called and said "that we were liable to be sued on account of this accident and wanted me to make out an accident report on it." And for the first time he examined the left side of the truck and "There was nothing on it, sir." There were no scratches, bumps or dents and there were no facilities at Ft. Leonard Wood to repair or repaint trucks. On cross-examination, after his memory had been refreshed from a deposition it developed that Lex had once said that two or three days after the accident he had inspected the truck "Because I told the boys at the office, back at the office about what had happened out there on the road *and we all went out to see if I had caused any trouble, to see if there was any marks or scratches on the truck and there were none.*" (Emphasis supplied.) When asked whether anyone was present when he inspected the truck he said, "Yes, I believe all the boys

that worked there at that time." He said that all of them were not working there in 1965 and when specifically asked "Were Mr. Smith (his brother E. L. Smith), Mr. Nickels, Mr. Ruthenberg with you when you inspected that truck?" he said, "No, sir." These three men he said were yet in the employ of Railway Express. It was further developed that in a deposition there had been this question and answer:

"Q. Now, you and Ruthenberg and your brother, E. L. Smith and Wilber Nickels, inspected this truck that you were driving some two or three days after this accident to see if there was any damage on it? Is that right?

"A. Yes, sir."

Subsequently on cross-examination there were these questions and answers:

"Q. Can you tell this jury when you and your brother and Mr. Ruthenberg looked at the left side of your truck in relation to the date of that report?

"A. Well, I don't remember it was, or that date, but I think it was after I made this report (to his office).

"Q. On January 30th * * *

"A. But I am almost certainly it was on the same day, that afternoon.

"Q. Which is January 30th, 1962; is that correct?

"A. Yes, sir."

On February 24, 1962, because it was "too small for the route," the truck Lex Smith was driving on December 8, 1961, was removed to Kansas City, inspected again—no dents found—and in August 1962 was repainted.

All this is the background context for the plaintiffs' assignment of error here that the trial court "committed error prejudicial to plaintiffs when it refused to allow plaintiffs' counsel to argue to the jury proper inferences the jury could draw from defendant REA's (Railway Express Agency) failure to produce witnesses not equally available to plaintiffs, namely Smith, Ruth-

enberg and Nickels, who were REA's employees, still in REA's employ and who had inspected REA's truck at a time in dispute after the occurrence in which plaintiffs had been injured, as, under the particular circumstances of this case, these employees were persons with knowledge which vitally affected the issues in the case and who were readily available as witnesses." Precisely the question arose in the course of the closing argument by plaintiff's counsel. Speaking of Lex Smith, Railway Express Agency's truck driver, he said, "Then two or three days later, on his sworn testimony, he said, 'I inspected the left side of that truck.' I asked him, 'Why?' 'To see if I had caused any damage.' 'Who was there?' 'Mr. Nickels was there, an employee of the Railway Express Agency; Mr. Ruthenberg was there, an employee of the Railway Express Agency; my own brother was there, an employee of the Railway Express Agency.' And now he says, 'I didn't make any report until a couple of months later and I inspected my truck the same day of that report.' *But, gentlemen, have you heard one word of testimony from his own brother, from his co-employees * * **

MR. FITZSIMMONS: May I object to that? *They are equally available to him to subpoena into this courtroom.*

*THE COURT: I will sustain the objection.* Don't shake your head, I am going to rule.

MR. ROCHE: I wasn't shaking it at you, Your Honor.

THE COURT: Go ahead.

MR. ROCHE: You have not heard any corroborating evidence to Smith, Now they want to tell you there could not have been any contact between that truck and this automobile."

In their motion for a new trial the plaintiff-appellants devoted two and one-half pages to this particular assignment of error but in view of the detailed background it is not necessary to summarize the assignment

here. It is sufficient to say that the essential basis of the motion was that these three employees of Railway Express Agency were not equally available to plaintiffs as witnesses and that their counsel had the right to comment on and draw unfavorable inferences from Railway's failure to call them as witnesses to the very vital issue of whether its truck bore any telltale marks of a collision. Contrary to the basis of counsel's objection and the court's ruling respondent Railway Express makes no attempt to justify either the objection or the court's ruling. It is now said that counsel did comment on the "non-production of *two* employees" and that they "were not witnesses to the accident and their testimony would be merely cumulative and would not affect the outcome of the trial." In short it is contended that the ruling was harmless or that it did not materially affect the merits of the action and therefore was not reversible error. Civil Rule 83.13(b), V.A. M.R.; RSMo 1959, § 512.160(2), V.A.M.S.

In one sense it may be that the testimony of E. L. Smith (Lex's brother), Nickels and Ruthenberg could be considered as cumulative, that is cumulative of Lex's testimony that there were no dents or marks on the left side of the truck. But in this case, certainly as to Railway Express Agency claiming that its truck did not touch the plaintiffs' Buick, one of the crucial issues, perhaps the most telling circumstantial issue, was whether any of the usual marks of a vehicular collision were to be found on the left side of the truck. There was a small collection of green paint, so the patrolman and others said, on the Buick automobile. An expert witness for Railway Express made a "spectographic" test of the particles found in the dented chrome of the Buick but he said that the sample "was so small that a definite, conclusive statement as to the complete identity could not be determined." Thus if there were any scraped places on the Railway Express truck, especially dents at a height corresponding to the small scraped and dented places on the Buick they would circumstantially lend strong support to the plaintiffs' claim that there had been a touching if not a sideswiping collision of vehicles. Since Lex Smith claimed that there was no occasion for him to check his truck at the scene and no one's attention was directed to his vehicle until two or three days or twenty days after the event it is certainly logical that Railway Express Agency would call as witnesses anyone who had examined the truck for the purpose of determining whether any of the usual scars of a vehicular collision were present.

The respondents do not contend to the contrary but beyond question a defendant's employee is not an equally available witness to the plaintiff in a tort action: "The failure of an employer to call as witnesses or explain the absence of his employees who have knowledge of the facts in issue has often been held to justify an inference or presumption adverse to the party." Annotation 5 A.L.R.2d 893, 896. And in this connection it has become a general rule, the more than twenty Missouri cases are noted in 68 A.L.R.2d l. c. 1075, that "it is permissible for counsel in a civil case, in his argument to the jury, to comment on the failure or omission of the adverse party to produce or examine as a witness on his behalf an employee of such party who is apparently qualified to testify in regard to the matter or question in issue." Annotation 68 A.L.R.2d 1072; Block v. Rackers, Mo., 256 S.W.2d 760, 764. There have been several instances in which trial courts have granted new trials after having erroneously denied plaintiffs or defendants the right to comment unfavorably upon their adversary's failure to call employees or other witnesses with "such a community of interest between Edster and plaintiff as to have made him a logical witness for plaintiff" or defendant. Deaver v. St. Louis Public Service Co., Mo.App., 199 S.W.2d 83, 86. (Curiously enough counsel for the defendant in the Deaver case was the trial judge in this case.) In Adam Hat Stores, Inc. v. Kansas City, Mo.App., 307 S.W.2d 36, the

trial court granted plaintiff a new trial upon failure to permit his counsel to argue the city's failure to call two employees who had inspected the plaintiffs' property for damages. That case sets forth the factors and defines "available." As stated the general rules are conceded and the problem here is whether the trial court so manifestly abused its discretion in overruling their motion that they are entitled to a new trial at the hands of this court. Halley v. Schopp, Mo., 400 S.W.2d 123, 126; 68 A.L.R.2d 1. c. 1081; Eaves v. Wampler, Mo. App., 390 S.W.2d 922, 929.

■ In this case there was no explanation for the failure of Railway Express to call as witnesses its three employees who had inspected the truck for the purpose of ascertaining whether it bore any marks indicating that it had been involved in a collision. Bowles v. Wabash Ry. Co., Mo. App., 271 S.W. 851, 852. That these three employees obtained material information on a point in issue is beyond question and an unfavorable inference arises from their failure to call them, particularly since they made an inspection to ascertain the fact. The Fred M. Laurence, D.C., 15 F. 635; Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062. "The fact that the porter whose duty it was to see that the doors of the vestibule were closed was not called upon to testify either at the trial or by deposition theretofore, at least raises a strong presumption to the effect his testimony would not have been favorable to defendant." Johnston v. St. Louis & S. F. R. Co., 150 Mo.App. 304, 316, 130 S.W. 413, 416. Williams v. Ricklemann, Mo., 292 S.W.2d 276, involved failure to call the defendant's wife, a passenger when her husband's automobile struck a child. While not an employee case the decision is of compelling force here: "We are convinced that the trial court's ruling sustaining the defendant's objection to plaintiff's argument was erroneous. * * * In this situation [not being equally available] the denial to plaintiff's counsel of the right to comment upon the failure of defendant to take the stand and to call his wife as a witness constituted prejudicial error." Or conversely when a defendant was denied the right to comment on a plaintiff's failure to call a doctor: "It is not a question of sufficiency of the evidence. It is a question of a litigant having been denied the right of argument to a jury. There is no way to determine from the record the effect of this ruling on the verdict. It is clear that defendant was entitled to make the argument and have the jury consider same in determining the question of damages. The error was prejudicial, and the judgment should be reversed and the cause remanded." McInnis v. St. Louis-Southern, Inc., 341 Mo. 677, 684, 108 S.W.2d 113, 116. By the same token the error in this case was manifestly prejudicial and the trial court abused its discretion in not granting plaintiffs a new trial as to the respondent Railway Express Agency.

While the respondents Voss Truck Lines and its driver Pettigrew had no part in the objection of counsel and the court's ruling and while the subject matter of inspection of the truck and failure to call the inspecting witnesses concerned Railway Express only and its liability, plaintiffs nevertheless contend that "(t)he benefits of these errors accrued equally to all defendants and were a major factor in all defendants receiving favorable verdicts" and that therefore they are also entitled to a new trial as to these two respondents. Although plaintiffs concede that "the trial errors complained of in previous points were committed at the behest of respondent REA," they say that they "erroneously attacked the credibility of plaintiffs, gave improper emphasis to witnesses for defendants and implied that plaintiffs had failed to bring in witnesses who were equally available to both sides."

■ The cases relied on by plaintiffs do not demonstrate prejudicial error in the particular circumstances of this appeal—here appealing plaintiffs against nonparticipating, nonoffending codefendants. In

the cited cases there were no aggrieved plaintiffs, in those cases an unsuccessful defendant appealed and attempted to take advantage of an error of a codefendant, usually a defendant who had been exonerated by either the court or a jury. And of course it is a general rule that one defendant may not complain of errors favorable to his codefendant unless the error affects the appealing defendant's defenses or liability. O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539, 545; Biggs v. Crosswhite, 240 Mo.App. 1171, 225 S.W.2d 514. And if the net result is that the appealing defendant has only been deprived of the advantage of "a joint verdict and judgment against both" that is not a valid ground for a new trial as to an exonerated codefendant. Phegley v. Graham, Mo., 215 S.W.2d 499, 6 A.L.R.2d 382. There is however an applicable lesson in these cases even though they are not precisely in point: "Stated in another way, the rule is that an error in favor of one defendant must not be such as to prejudice the other defendant's case before the jury, otherwise the plaintiff though not having invited the error has secured an unfair advantage over one of the defendants, and the judgment cannot stand." Nevins v. Solomon, 235 Mo.App. 967, 973, 139 S.W.2d 1109, 1113; State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836.

■ While the issue of whether the Railway Express truck touched and sideswiped the appellants' Buick may have involved the important question of credibility that too was in point of fact only an issue between plaintiffs and Railway Express. There was but slight if any issue of credibility between plaintiffs, Voss and Pettigrew—at best the questions were simply estimates of distances and speed, questions of judgment and opinion. Irrespective of how the Buick got across the median strip into the path of the Voss truck, Voss's and Pettigrew's liability were not dependent on anything Lex Smith and Railway Express did—the submitted issue as to them was whether "at the moment when said defendant (Pettigrew) first knew or could have known of such position of immediate danger said defendants still had enough time * * * he could have avoided injury to * * * by either slackening his speed or swerving." As to each plaintiff Voss and Pettigrew simply conversed this submission. There was no submitted issue here, as in the Biggs case, of sole cause. In principle the case nearest in point is Ciardullo v. Terminal Railroad Association of St. Louis, Mo., 289 S.W.2d 96, 60 A.L.R.2d 516. There a switchman sued Terminal and Graham Paper Company, there was a verdict in favor of plaintiff against Graham Paper for $15,000 and a defendant's verdict in favor of Terminal. Both plaintiff and Graham Paper appealed and Graham complained of Terminal's burden of proof instruction. Material here the court said, 289 S.W.2d l. c. 98–99, "There is no instruction in this case based on the sole negligence of Terminal and Graham has not shown how its burden of proof has been increased or the question of its liability affected. For the same reason appellant Graham's complaint as to Instruction 7 cannot be sustained; it does not alter or prejudice the theory of Graham's liability to the plaintiff as submitted in instructions given at the request of Graham and the plaintiff and of which no complaint is made on this appeal. * * * Even if appellant Graham were correct in all of its contentions, the result at best would be to make Terminal jointly liable and not to exculpate Graham. From the authorities cited it is apparent that this is not the purpose of permitting and appealing defendant to take advantage of an error in a co-defendant's instruction."

■ In addition to their assignment of error with respect to the argument of counsel appellants have briefed two other points not necessary to consider in disposition of this appeal; (a) refusal to strike the testimony or give a withdrawal instruction as to Railway's paint expert and (b) permitting Railway to read the entire statement given by Lex Smith. It is said that the

"cumulative effect" of these errors entitled plaintiffs to a new trial as to all defendants. It is sufficient here to say that the errors complained of are not comparable to counsel's persistent improper conduct in repeated disregard of the court's rulings as in Myers v. Moffett, Mo., 312 S.W.2d 59, and, therefore, the doctrine of "cumulative effect" is not applicable to this appeal.

For the reasons indicated the judgment as to Voss Truck Lines and Sanford O. Pettigrew is affirmed and the judgment as to Railway Express Agency is reversed and remanded.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.