DENNIS P. LANNERT, Plaintiff-Appellant, *v.* GREYHOUND COMPUTER CORPORATION, Defendant-Appellee.

Second District   No. 78-278

Opinion filed August 1, 1979.

James A. Campion, of Joslyn and Green, of Woodstock, for appellant.

Thompson and Thompson, of Long Grove, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Dennis Lannert, brought an action to recover $11,250 allegedly due under an incentive compensation plan sponsored by defendant, Greyhound Computer Corporation. The trial court entered judgment for defendant and plaintiff brings this appeal.

Plaintiff was employed by defendant from July 1, 1969, until he voluntarily resigned on July 2, 1976. Beginning January 1, 1976, plaintiff was entitled to participate in an incentive compensation plan in addition to his $30,000 annual salary. The plan provided that plaintiff would be paid an "incentive base" of $15,000 per year if company income equaled 100% of the approved operating plan. The plan also provided that plaintiff would be paid 2.5 times the "incentive base" as "maximum incentive compensation" in the event company profits further exceeded certain projections. Altogether, plaintiff would be entitled to an incentive bonus of $18,750 for the six months he was employed in 1976.

The parties agree that company operations were such that both the "incentive base" and "maximum incentive compensation" were due under the agreement. It is also agreed that upon termination plaintiff was paid

the "incentive base" or $7,500. The dispute in this case is whether plaintiff is entitled to the "maximum incentive compensation" of $11,250 since he resigned prior to the end of the year.

The controversy centers around interpretation of the following provision in the incentive compensation plan:

> "If an employee is terminated because of illness, disability, or death during the course of the year, incentive compensation is limited to the amount earned to the end of the quarter closest to the date when the termination took place. If an employee is terminated for any reason other than illness, disability or death during the course of the year, incentive compensation is limited to the amount earned to the end of the quarter closest to the date when the termination took place with a maximum of 100% of the pro rata portion of the Incentive Base for such quarter."

In short, an employee who is terminated for reasons of health is entitled to that portion of both the "incentive base" and "maximum incentive compensation" earned to the end of the quarter closest to termination, whereas an employee terminated for any other reason is limited to an amount equal to the "incentive base." Defendant refused to pay plaintiff the "maximum incentive compensation" of $11,250, arguing that voluntary resignation was a termination for "reasons other than illness, disability or death."

Plaintiff filed suit on September 21, 1977, contending that the phrase "employee is terminated" does not include voluntary resignations and that under the plan incentive compensation becomes earned and vested quarterly, thereby entitling him to the $11,250. Defendant apparently concedes that if the limitations of the "Termination" provision do not apply, plaintiff is entitled to the money. The trial court entered judgment for defendant, finding that the compensation plan was comprehensive in scope including both voluntary and forced terminations.

Plaintiff argues on appeal that the phrase "employee is terminated" excludes by definition voluntary resignation. The verb "is terminated" forms the passive as opposed to active voice making the subject of the verb (employee) the recipient of the action rather than the actor. Strictly speaking, "employee is terminated" means terminated as a result of action by someone other than the employee.

Defendant cites cases that hold that the phrase "termination of employment" means a complete severance of the relationship of employer and employee by a positive act of either the employee, employer, or both. (*Moss v. Aetna Life Insurance Co.* (S. C. 1976), 228 S.E.2d 108, 111; *Lineberger v. Security Life & Trust Co.* (1956), 245 N.C. 166, 170, 95 S.E.2d 501, 503; *Peters v. Aetna Life Insurance Co.* (1937), 279 Mich. 663, 665, 273 N.W. 307, 308; *Burns v. Stento* (1939), 9 N.Y.S.2d 736,

742.) These cases, however, are not controlling as they do not seek to define the phrase "employee is terminated."

In sum, we find the language in question to be subject to a variety of plausible interpretations. As a result we feel it best to apply the widely accepted rule that "[a]n instrument is to be construed most strongly against its author." (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 333, 75 N.E.2d 874.) The record indicates that the plan was drafted by defendant Greyhound Computer Corporation, and any ambiguity is to be resolved against Greyhound.

In *Montgomery Ward & Co. v. Reich* (1955), 131 Colo. 407, 411, 282 P.2d 1091, 1093, the Colorado Supreme Court interpreted an extra compensation agreement remarkably similar to the plan at issue here. In that agreement extra compensation was to be paid based on the net profit of the store which the defendant managed. The agreement provided that "[i]f, during the year, your employment *is terminated* for any reason, or if you become disabled, or are placed on a leave of absence, both your eligibility for Extra Compensation and the amount thereof, if any, shall be at the discretion of a Bonus Committee." (Emphasis added.) Defendant voluntarily resigned before the end of a fiscal year, and the bonus committee denied his claim for extra compensation. The court, however, found that the defendant was entitled to a proportionate share of the extra compensation:

> "Of course, counsel for plaintiff contends that by his resignation defendant forfeited the right to the extra compensation. We find this to be an appropriate occasion to repeat the time-honored statement that forfeitures are not favored in the law, and to be effectual, must be clear and unequivocal; and further, this contract is to be liberally construed in favor of defendant, because it was drafted by plaintiff. An analytic reading of this contract will not permit any construction other than that extra compensation based on the net profit of the store for the fiscal year is an uncalculated addition to the salary fixed therein. * * * In the absence of any failure on the part of defendant to faithfully serve plaintiff under this contract, justice requires that it be determined that he earned the proportionate part of the net profit of the store for the period which he served. A further provision in the contract, 'No extra compensation or any part thereof shall become due or payable before the end of the fiscal year' is not a condition concerning the payment of the extra compensation, but is only a fixing of the time at which it was to be paid. Logical reasoning for this is in the fact that the net profit for the fiscal year could not be determined until the close of that period.

Cases upon which counsel for plaintiff relies to support denial of

this extra compensation to defendant are based upon contracts containing clear and unequivocal forfeiture in the event of voluntary termination of the employment by the employee." 131 Colo. 407, 411, 282 P.2d 1093; see also *Haggar Co. v. Rutkiewicz* (Tex. Civ. App. 1966), 405 S.W.2d 462; *Anderson v. Automatic Sprinkler Corp. of America* (1978), 147 Ga. App. 236, 248 S.E.2d 507.

Here, too, there is an absence of clear and unequivocal language that voluntary termination would result in a forfeiture. The fact that under the plan payment for the fourth quarter must await a year-end audit does not affect plaintiff's right to a proportionate share of his bonus based on service for two quarters. Accordingly we hold the plaintiff is entitled to $11,250 as his proportionate share of the "maximum incentive compensation." Thus we reverse the judgment of the Circuit Court of McHenry County and remand with directions to enter judgment in favor of plaintiff.

Reversed and remanded.

SEIDENFELD and RECHENMACHER, JJ., concur.