17442

Pearl F. WALTZ, Appellant, v. The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent

(104 S. E. (2d) 384)

*Messrs. Hydrick & Hydrick,* of Orangeburg, *for Appellant,*

*Messrs. Robinson, McFadden & Dreher,* of Columbia, and *T. B. Bryant,* of Orangeburg, *for Respondent,*

July 3, 1958.

Moss, Justice.

The Equitable Life Assurance Society of the United States, the respondent herein, did, on August 18, 1955, issue and deliver to Sav-Way Food Stores, Inc., and Associates, a group accidental death and dismemberment Policy of Insurance, No. 51869D, which included the employees of Merchants Produce Co., an associate of Sav-Way Food Stores, Inc. R. H. Waltz was insured under the group policy and was issued an individual certificate effective May 21, 1955, by the terms of which it was provided that if the insured should lose his life by reason of bodily injuries caused directly and exclusively by external violent and accidental means, his beneficiary, Pearl F. Waltz, the appellant herein, would be paid the sum of $1,000.00, subject to the limitations and provisions set forth in the master policy delivered to the insured's employer. It is an admitted fact that the insured died on December 29, 1955, as a result of gunshot wounds.

The insured, R. H. Waltz, had been in the employ of Merchants Produce Co. since November 1949. The employer was engaged in selling, at wholesale, produce and

groceries. The insured ordinarily went to work about 2 or 3 o'clock in the morning and it was his duty to load trucks with the merchandise which was sold in truck load lots. It was his duty also to collect the sales price from the customers of his employer. The insured carried the keys to the warehouse of his employer.

This action was instituted by Pearl F. Waltz, the appellant herein, who is the designated beneficiary in the accidental death and dismemberment policy issued to the insured. The complaint alleged the issuance of the contract of insurance hereinbefore referred to. It alleged the accidental death of the insured.

The respondent, by its answer, admitted the execution and delivery of the group policy providing for insurance against accidental death of all eligible employees of Merchants Produce Co. and that R. H. Waltz, an employee thereof, had elected to participate in the group insurance, and that there was issued to him its individual group accidental death and dismemberment Certificate No. 51869D-11, subject to the terms of the certificate and the group policy.

The respondent also asserted that at the time of the death of R. H. Waltz his employment with Merchants Produce Co. had been terminated. This defense was based upon the following provision of the policy:

"The insurance hereunder of any employee shall cease automatically upon the occurrence of any of the following events:

"(1) * * *

"(2) * * *

"(3) the termination of his employment in the classes of employees insured hereunder. Cessation of active work by an employee shall be deemed to constitute the termination of his employment except that, subject to the continuance of the payment of premiums for the insurance hereunder.

"(a) An employee absent from active work because of injury or sickness will be regarded as still in the employment

of the Employer during the period of such absence until the effective date of termination of such employee's insurance as entered on the records maintained in connection with this policy.

"(b) An employee temporarily laid off or given leave of absence will be regarded as still in the employment of the Employer for the full period of such lay-off or leave of absence but not exceeding a maximum period of three months."

The answer alleges that the employment of R. H. Waltz by Merchants Produce Co. terminated on December 22, 1955, and that his death occurred on December 29, 1955, after the termination of his employment with Merchants Produce Co., and hence, there was no liability under the policy, even if the insured died of accidental injuries.

This case was tried before the Honorable J. Woodrow Lewis and a jury at the 1957 October Term of the Court of Common Pleas for Orangeburg County, South Carolina, and resulted in a directed verdict in favor of the respondent. The appellant made a motion for a new trial, which was overruled. The case is before this Court upon due notice of intention to appeal. The thirteen exceptions raise for determination four questions. (1) Was it error to direct a verdict for the Insurance Company? (2) Was there any evidence of waiver or estoppel on the part of the respondent requiring the submission of this issue to the jury? (3) Did the trial Judge commit error in excluding from evidence a notice of the death of the insured given by his employer under a life policy? (4) Did the trial Judge commit error in not considering the effect of certain South Carolina statutes?

The respondent, at the close of the testimony in behalf of the appellant, moved the court for a nonsuit on the ground that the appellant had failed to show by the evidence that the insured was employed by Merchants Produce Co. at the time of his death. The respondent asserts that the burden was upon the appellant to make this showing because the insurance policy provided for automatic termination of coverage if the insured's employment had been terminated at the time

of his death. The trial Judge refused the motion for a non-suit and asserted that the burden of proof was upon the appellant to show that the policy was in full force and effect at the time of the insured's death. The respondent, at the close of all of the testimony, moved for a directed verdict on the ground that the evidence as a whole established that the employment of Richard H. Waltz by Merchants Produce Co. had terminated prior to his death, and that the insurance coverage automatically terminated with the termination of employment.

It becomes unnecessary for us to decide the question of the burden of proof because the Circuit Judge directed a verdict for the respondent on the ground that from all of the evidence it appeared conclusively that the deceased was not in the employ of Merchants Produce Co. on the date of his death, and hence, the accidental death and dismemberment insurance which he had while an employee had terminated under the terms of the group policy. In directing a verdict for the respondent, the Circuit Judge said:

"The testimony in this case, in my view of the matter, leaves no issue for the jury to determine as to whether the deceased was on December 29th, 1955 in the employ of his employer. He was on December 22nd, by the testimony, arrested for misappropriating property or funds of his employer. On that date he returned some $1,900.00 funds found on his person at the time of his arrest, returned to the employer. Immediately the employer changed the locks on his buildings so as to make ineffective the keys that were in possession of the deceased.

"It is uncontradicted by any testimony of any probative value that the deceased did not work for his employer after December 22nd, 1955. It is uncontradicted that the deceased was not paid any wages after December 22nd, 1955.

"The facts and circumstances in evidence leave no doubt in my mind that there is no testimony, no issue to submit to the jury as to whether the deceased was employed on December 29th, 1955, the date of his death. The testimony in

my opinion shows conclusively that he was not employed by his employer."

The respondent produced as a witness Everett Arant, the manager and owner of Merchants Produce Co., who testified as follows:

"Q. When did his services end with the Merchants Produce Company? A. On December 22nd.

"Q. That was one week prior to December 29th? A. Yes, sir, that is right.

"Q. Mr. Arant, would you tell us the circumstances under which his services were terminated, when he left the employment? Why did he leave the employment of Merchants Produce Company? A. Well, the City Police came and asked to see him. The next I knew he was up at the court, up in the City jail.

"Q. Was he arrested? A. Yes, sir.

"Q. Now I want to ask you, Mr. Arant, did he ever work for you after that day, after December 22nd? A. No, sir, he never worked for the company.

"Q. Mr. Arant, did he have the keys to your warehouse prior to December 22nd? A. He had the keys on December 22nd.

"Q. What did you do—did you do anything about the keys or locks that you had on your doors? A. I had several doors but I put new locks on them. I did not ask him for the keys. We got the keys from him but I put new locks to be sure that I would not have no trouble.

"Q. Did he render any service, perform any work for Merchants Produce Company after December 22nd, 1955, until his death? A. He did not do anything for us.

"Q. Was he paid any compensation for work after December 22nd? A. No, sir, not by the Company."

Upon cross examination, this witness testified as follows:

"Q. Anyhow, when he was arrested you went to the headquarters, the police headquarters? A. They called me, yes, sir, and I went up there.

"Q. I believe you found something like $1,900.00 on this person? A. Yes, sir.

"Q. You took all of that? A. He gave it to us.

"Q. Did he at that time tell you that some of that money belonged to him? A. I don't know that he did. I don't think so."

And again from his cross examination, we quote the following:

"Q. And this money that he paid you was money that he had received from the sale of sugar and other merchandise which you carried? A. Yes, sir, I imagine so.

"Q. I believe that he came down to see you during the holidays just after Christmas, during the week in which he died? A. Yes, sir, he came down once to see me. He called and asked if I would talk to him and he came down to see me.

"Q. Didn't you tell him you would be glad to make any proper adjustment of the differences between you? A. I certainly did."

On re-direct examination the following testimony was given:

"Q. Mr. Arant, let me ask you, if your answer to Mr. Hydrick's question whether or not you told Mr. Waltz you would be glad to try to make adjustments about the matter. whether or not that was in reference to the money that he had failed to turn in for the sale of your property or whether or not that had to do with bringing him back in your employment? A. It only had to do with trying to find out, if possible, what was right as far as the money that was spent, not at all with the employment."

The testimony as is above quoted was not denied by any of the witnesses for appellant. None of the witnesses attempted to say that the insured worked after December 22, 1955. The testimony shows that the appellant knew of the arrest of her husband and that she signed a $4,000.00 bond before the Magistrate for his appearance in court.

As is heretofore stated, the group accidental and dismemberment policy provided that the insurance of any employee would cease upon "termination of his employment" and "cessation of active work by an employee shall be deemed to constitute the termination of his employment", except an employee absent from active work because of sickness or injury, or one temporarily laid off or given a leave of absence, may be considered as still in his employment, under certain conditions stated in said policy. There was no evidence that the insured was absent from active work because of injury or sickness, nor that he was temporarily laid off, or given a leave of absence.

The case of *Lineberger v. Security Life & Trust Company*, 245 N. C. 166, 95 S. E. (2d) 501, 503, was an action by a beneficiary to recover the face value of a certificate of life insurance issued to an employee under a group life policy, issued by insurer to a company, for whom the employee worked prior to his death. A judgment was rendered for the insurer, and upon appeal by the beneficiary, the North Carolina Supreme Court said:

"This policy provides: 'Termination of Insurance. The insurance of any employee insured hereunder shall automatically cease: * * * (2) On the date of the termination of his employment. Termination of employment for the purposes of insurance hereunder, shall mean cessation of active work as an employee, except * * *.' There are two exceptions: one, if an employee's cessation of active work is caused by sickness, injury or retirement, and two, if an employee is on leave of absence or temporary lay-off. The two exceptions are not relevant here.

"It seems evident that the words 'termination of his employment' within the terms of the policy refer to the status of the employee rather than to a contractual relationship, and must mean a complete severance of the relationship of employer and employee, of which the employee has knowledge, by positive act on the part of either or both. It is such a termination of employment as will make effective all parts

of the insurance contract. This is apparent from the exception that 'if an employee's cessation of active work is caused by sickness, injury or retirement, his employment may be deemed to continue until premium payments for such employee's insurance are discontinued by the employer.' *Pearson v. Equitable Life Assurance Society*, 212 N. C. 731, 194 S. E. 661; *Emerick v. Connecticut General Life Ins. Co.*, 120 Conn. 60, 179 A. 335, 105 A. L. R. 413; *Beecey v. Travelers' Ins. Co.*, 267 Mass. 135, 166 N. E. 571; *Colter v. Travelers' Ins. Co.*, 270 Mass. 424, 170 N. E. 407; *Peters v. Aetna Life Ins. Co.*, 279 Mich. 663, 273 N. W. 307; 44 C. J. S. Insurance, § 329, p. 1265; Appleman's Insurance Law and Practice, Vol. 1, sec. 122."

Most group insurance contracts expressly provide that the termination of employment of the insured employee will cause his insurance automatically to terminate. A number of cases in this State have involved policies of this character. *Murphy v. Equitable Assurance Society of the United States*, 197 S. C. 393, 15 S. E. (2d) 646; *Cogsdill v. Metropolitan Life Ins. Co.*, 158 S. C. 371, 155 S. E. 747; *Hilton v. Travelers Ins. Co.*, 186 S. C. 365, 195 S. E. 629; *Greer v. Equitable Life Assurance Society of United States*, 180 S. C. 162, 185 S. E. 68; *Powell v. Equitable Life Assurance Society of United States*, 173 S. C. 50, 174 S. E. 649. However, these cases are not helpful under the factual situation here.

The appellant seems to place much emphasis upon the failure of the employer to give notice to the employee of the "termination of employment." Where an employee discontinues his status as such by his own acts, the employer is not required to give him notice of termination of employment in order to terminate employee's rights under a group life insurance policy providing for automatic termination of policy on termination of employment. *Pearson v. Equitable Life Assurance Society of United States*, 212 N. C. 731, 194 S. E. 661, 664.

> We agree with the Circuit Judge that there was no issue to submit to the jury as to whether the deceased was employed on December 29, 1955, the date of his

death. The testimony, in our opinion, show conclusively that the insured's employment was terminated on December 22, 1955, at the time he was arrested and charged with misappropriating his employer's money. The employee's own act brought about the termination of his employment.

The next question for consideration is whether there was any evidence of waiver on the part of the respondent requiring the submission of this issue to the jury. The appellant asserts that the collection and retention of one month's insurance premium in advance, which would carry the policy insofar as payment of premiums are concerned until December 31, 1955, is evidence of waiver and should have been submitted to the jury.

The testimony shows that on November 26, 1955, the employer remitted to the respondent the sum of $5.84, which represented one month's insurance premium of the deceased in advance. It is apparent from the testimony that on November 26, 1955, the date of the payment of the premium of deceased, that he was then an employee of Merchants Produce Company. The fact that on December 22, 1955, he left the employ of his employer and did not return to such employment prior to his death, and that the premium was not returned, does not amount to a waiver, because at the time of the payment of the premium, and the receipt thereof by the respondent, the deceased was an employee. The conditions which subsequently arose taking the insured out of the class of employees under the terms of the policy, could not have been known by the company at the time the premium was accepted. It is apparent from the facts above stated that R. H. Waltz was insured against accidental death from December 1 until December 22, 1955, this being the time of the termination of his employment. The legal risk insured against had attached and there is no provision in the contract of insurance requiring that the premium be apportioned. In 29 Am. Jur., Insurance, para. 460, at page 380, it is said:

"* * *, if a legal risk insured against has once attached and there are no statutory or contractual provisions to the contrary and no fraud or fault on the part of the insurer, the premium is not apportionable, and the insured is not entitled to a return of any part of the premium paid. Accordingly, if the risk attaches, and if a forfeiture results from a breach of a promissory warranty or a condition subsequent, the insurer cannot be required to return any part of the premium. Nor need an insurer return or tender the premiums received, as a condition of setting up as a defense the death of the insured from an excepted cause, since the insurance contracted for has been given."

In the case of *Brown v. Farmers Mutual Fire Ins. Ass'n,* 179 S. C. 274, 184 S. E. 670, 671, this Court said:

"* * * Where, however, the premium is paid, and in consideration of it the company contemporaneously issues its policy, which is a contract to insure on certain conditions therein mentioned, and the insured violates those conditions in a material particular without the knowledge of the insurer, in case of loss the insurer is not bound to return the consideration of the policy before standing upon its terms. The consideration has been paid, not for an absolute promise, but for a promise of the insurer to hold itself liable for loss on certain conditions. The company does not fail in its promise by insisting on its conditions. The company does not fail in its promise by insisting on its consideration. The insured has received all he contracted and paid for—conditional insurance—and he has no right to demand a return of the price paid from the insurer, on pain of liability for unconditional insurance. * * *"

We agree with the Circuit Judge that there was no evidence in the case requiring the submission of the issue of waiver to the jury.

The third question for determination is whether or not the trial Judge committed error in excluding from evidence a notice of the death of the insured given by his employer under a life policy.

The record shows that Richard H. Waltz, in addition to the accidental death and dismemberment policy here sued upon, which is No. 5186D, also had with the respondent a group life policy No. 51869, which provided for the payment of the amount of principal of such policy with the coverage of thirty-one days after termination of the insured's employment with Merchants Produce Company. The accidental death and dismemberment policy did not contain a provision for coverage for thirty-one days after termination of employment. The respondent paid to the appellant the amount due under the group life policy, as was its obligation so to do, because the insured died within thirty-one days from the termination of his employment. It is readily apparent that the terms of the two policies were entirely different. Under the group life policy Richard H. Waltz was an employee within the meaning of the group life policy for a period of thirty-one days after December 22, 1955. It should be pointed out also that the notice shows that the last day the insured worked for the employer was on December 22, 1955.

We think the trial Judge was correct in refusing to admit this notice in evidence because it clearly appears that the status of the deceased under the group life policy was entirely different from his status under the accidental death and dismemberment policy.

The final question for consideration is whether the trial Judge committed error in not considering the effect of Section 37-307, subsections 8 and 10, of the 1952 Code of Laws of South Carolina, as is contained in the 1957 Cumulative Supplement of the Code. The appellant contends that the policy here sued upon should have been construed as containing the provisions required by these sections of the Code.

It does not appear from the record that the Circuit Court was called upon to consider the foregoing statute in connection with this case. Certainly there was no mention of the statute in the order of the Circuit Judge directing a verdict.

The respondent asserts that the first time this statute was referred to in this case was in the exceptions filed by the appellant. We agree with the respondent that the record does not show that this statute was considered by the lower Court. It was not pleaded, nor is there any reference thereto anywhere in the record, except in the exceptions of the appellant.

This question poses issues which were not raised by the pleadings, and therefore, were not decided by the trial Court. They cannot be raised for the first time on appeal. We have so held in a number of cases. *Richardson v. General Motors Acceptance Corp.*, 221 S. C. 14, 68 S. E. (2d) 874; *Simonds v. Simonds*, 229 S. C. 376, 93 S. E. (2d) 107.

All exceptions are overruled and the judgment below is affirmed.

STUKES, C. J., TAYLOR and LEGGE, JJ., and E. H. HENDERSON, A. A. J., concur.