Andrew CIARDULLO, Respondent-Appellant,

v.

The TERMINAL RAILROAD ASS'N OF ST. LOUIS, a Corporation, Respondent,

and

The Graham Paper Company, Appellant.

No. 44820.

Supreme Court of Missouri.

Division No. 2.

April 9, 1956.

E. C. Hartman, St. Louis, for (defendant) appellant, The Graham Paper Co.

Jack H. Ross, St. Louis, for (plaintiff) appellant-respondent.

Warner Fuller, Arnot L. Sheppard, John P. Montrey, St. Louis, for respondent, Terminal Railroad Assn.

Mark D. Eagleton, Thomas F. Eagleton, Leland Jones, and Jack H. Ross, St. Louis, for (plaintiff) respondent Andrew Ciardullo.

STORCKMAN, Judge.

This is an action for damages for personal injuries sustained by plaintiff, a railroad switchman, in a fall from an elevated platform for the loading and unloading of railroad freight. Plaintiff sued his employer, The Terminal Railroad Association of St. Louis, and The Graham Paper Company, the owner of the freight dock from which plaintiff fell. The verdict and judgment was in favor of plaintiff against The Graham Paper Company in the sum of $15,000, but in favor of The Terminal Railroad Association of St. Louis. The Graham Paper Company and plaintiff both appealed. For convenient reference The Terminal Railroad Association of St. Louis will sometimes be referred to as Terminal and The Graham Paper Company as Graham or the paper company.

The plaintiff had been employed by defendant Terminal as a switchman since April 12, 1952, and on August 19, 1953, when the accident occurred, was working a shift starting at midnight and ending at 8:00 o'clock in the morning. At about 4:00 o'clock in the morning of the night in question the plaintiff, from a position on the dock, assisted in spotting a freight car and, that being done, the plaintiff started to walk eastwardly on the dock in order to get to the ground and return to the switch engine. The night was dark and there was no artificial lighting on the dock except an electric lantern carried by plaintiff which was de-signed chiefly for signaling other members of the switching crew and the engine crew. The plaintiff fell from the dock to a concrete walk below and sustained a fracture in the elbow joint of his left arm. The dock was about the height of the floor of a railroad freight car. Although in pain, plaintiff remained on the job until the end of the shift at 8:00 a. m. He then went to the Missouri Pacific Hospital where his arm was X-rayed and put in a cast. It was almost four months before he was able to return to his job as a switchman for the Terminal.

The plaintiff contends that he stumbled and was caused to fall by reason of loose boards or lumber left and permitted to remain upon the dock and which he did not see because of the darkness. The dock was equipped with electric lights, but the switch for turning them on was located inside Graham's building and the building was closed and the doors locked at the time of the accident.

The case was submitted to the jury upon the alleged violation of defendant Terminal's statutory duty to furnish plaintiff with a reasonably safe place in which to work and upon Graham's alleged common-law negligence. The acts of negligence claimed in each instance were causing and permitting loose boards to remain upon the dock and a failure to provide adequate artificial lighting.

In addition to claiming that the verdict is excessive, Graham assigns error in the giving of two instructions requested by its co-defendant Terminal. We will first consider the assignments of error alleged in the giving of Instructions Nos. 3 and 7.

Instruction No. 3 is a burden of proof instruction given at the request of Terminal. It instructs the jury that before they can return a verdict in favor of the plaintiff and against defendant Terminal the "plaintiff must *establish*,[1] by the greater weight of the credible evidence every fact, which under Instruction No. 2 must be

1. Emphasis here and elsewhere in the opinion has been supplied unless otherwise noted.

established in order to warrant such a verdict." There is no charge that Instruction No. 2, which was plaintiff's verdict-directing instruction against defendant Terminal, was erroneous. Another burden of proof instruction, given at the request of defendant Graham, dealt solely with the relations between the plaintiff and Graham. This Instruction No. 5 stated that "the burden of proof is upon the plaintiff to *prove* by the preponderance, that is, the greater weight of the credible evidence," that defendant Graham was guilty of negligence and unless the jury so found their verdict would be in favor of defendant Graham.

Graham contends that the use of the word "establish" in Terminal's burden of proof Instruction No. 3 required a higher degree of proof than the word "prove" used by Graham in its burden of proof Instruction No. 5. In its argument Graham states "There could be no quarrel with our conclusion that the jury in this case was definitely led to believe that *the plaintiff* in the case was required to bring forward *far more proof of the [negligence of the] defendant Terminal Railroad Association."*

■ A defendant is not entitled to a reversal because of every error in a co-defendant's instructions. In the case of Clark v. St. Louis & S. R. Co., en banc, 234 Mo. 396, 137 S.W. 583, it was broadly stated, loc. cit. 591, that "The law in this state is well settled that the respondent [plaintiff] cannot be affected by instructions asked or given between defendants." It was held in the Clark case, however, that the instruction complained of was not erroneous as between the defendants. In later cases it has been held that the statement of this rule was broader than necessary for the decision of the case and therefore not controlling. See State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836, 840 [3, 4]. The established rule seems to be that an appealing defendant can avail itself of an error in a co-defendant's instruction which affects the question of the appealing defendant's liability to the plaintiff and prejudices such defendant's interests. Phegley v. Graham, Mo., 215 S.W.2d 499, 503, 6 A.L.R.2d 382;

State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836, 839; O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539, 545.

Fundamentally, Graham's complaint is that the word "establish" is not synonymous with "prove" and denotes a more strict or higher degree of proof whereby Terminal got the benefit of a more favorable submission.

■ The statement of the point and Graham's argument proceed wholly upon this theory. The appealing defendant has not pointed out any specific manner in which the question of its liability or defenses were affected, nor have we been able to discover any. Graham's burden of defense was not increased nor was plaintiff's burden with respect to proving its case against Graham relieved or lightened. Under these circumstances we need not determine if the instruction is erroneous. The appellant cannot complain simply because a co-defendant's erroneous instruction was more favorable than proper to such defendant and thereby prevented a joint verdict and judgment against defendants. Phegley v. Graham, Mo., 215 S.W.2d 499, 503 [3]; Neal v. Curtis & Co. Mfg. Co., 328 Mo. 389, 41 S.W.2d 543, 553 [15].

Graham cites and relies upon the case of Grimes v. Red Line Service, Inc., 337 Mo. 743, 85 S.W.2d 767, in which an erroneous burden of proof instruction given at the request of a co-defendant cut across and increased defendant Red Line Service Company's burden of proof in a sole cause instruction given at the request of defendant Red Line and designed to relieve such defendant of liability to the plaintiff. There is no instruction in this case based on the sole negligence of Terminal and Graham has not shown how its burden of proof has been increased or the question of its liability affected.

For the same reason appellant Graham's complaint as to Instruction 7 cannot be sustained; it does not alter or prejudice the theory of Graham's liability to the plain-

tiff as submitted in instructions given at the request of Graham and the plaintiff and of which no complaint is made on this appeal. Instruction 7 directed a verdict for Terminal if the jury found that the defendant Graham was negligent in permitting loose boards to lay upon the darkened dock and that such fact was known to Graham in time to have removed the boards and "that such failure, if any, was negligence, and if you further find that such negligence, if any, was the sole, direct and proximate cause of the injury, if any, to plaintiff, and *if you further find that defendant Terminal Railroad Association of St. Louis was not negligent in the manner submitted to you in Instruction No. 2, * * *.*"

Appellant Graham's complaints against Instruction No. 7, as stated in Points II and III of its brief, are that the instruction is a sole cause instruction and was not justified under the evidence and further that the instruction does not hypothesize the non-delegable duty of the defendant Terminal to furnish plaintiff a reasonably safe place to work. Appellant Graham makes no complaint of Instruction 4 given at the request of the plaintiff and directing a verdict against Graham on substantially the same grounds hypothesized in the first part or "sole cause" portion of Instruction 7. Instruction No. 7 then refers to and incorporates the requirements of Instruction No. 2 which is plaintiff's verdict-directing instruction against Terminal and which includes a charge on Terminal's duty to furnish a safe place to work. The appellant Graham has not pointed out any way in which the question of its liability to the plaintiff has been affected by the alleged errors in Instruction No. 7. The burden of its complaint is that the legal relations *between the plaintiff and defendant Terminal were affected.* For example, it concludes its Point III with this declaration: "In such circumstances the instruction could not fail to confuse and mislead the jury *as to the duty of the defendant Terminal with respect to the condition of the dock.*"

We do not deem it necessary to determine whether this Instruction No. 7 is subject to

the criticism made of it, since appellant Graham has not specified any way in which the instruction changed or prejudiced the issues between it and the plaintiff. Eller v. Crowell, Mo., 238 S.W.2d 310, 315 [9].

Appellant Graham also cites the case of O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539; Berry v. Kansas City Public Service Co., 341 Mo. 658, 108 S.W.2d 98, and State ex rel. Nevins v. Hughes, 347 Mo. 968, 149 S.W.2d 836. We have carefully examined these cases, along with others, and can find no grounds for the relief of the appellant under the facts of this case. Even if appellant Graham were correct in all of its contentions, the result at best would be to make Terminal jointly liable and not to exculpate Graham. From the authorities cited it is apparent that this is not the purpose of permitting an appealing defendant to take advantage of an error in a co-defendant's instruction.

It is unnecessary for us to determine whether either Instruction 3 or Instruction 7 was erroneous with respect to its declaration of the legal rights of plaintiff against defendant Terminal. The plaintiff urges that the instructions are not erroneous but if they were it alone, and not the appealing defendant, would have the right to complain. It frankly states that its appeal against defendant Terminal "has been taken only as a cautionary measure."

Next for consideration is appellant Graham's contention that the verdict of $15,000 is excessive. The injuries suffered by the plaintiff are confined solely to the elbow of his left arm. His pecuniary damages consist of a wage loss of between $1,500 and $1,600. There were no medical or hospital expenses. Plaintiff returned to his work as a switchman for the Terminal at the same wage rate he earned before the accident, which was about $416 per month. At the time of trial he had been working for a period of about ten months, apparently without loss of time.

Plaintiff testified that he had "steady pain" in his elbow and that it usually gets

worse after he has done work with the arm or has kept it in one position too long. He does not have any special training or education and has been a manual worker since he was 16 years of age. He was 30 years old at the time of the trial.

The X-rays showed that plaintiff suffered a fracture running lengthwise of the bone into the head of the radius. There was no massive displacement of fragments, but one fragment was displaced downward causing a deformity or irregularity of the head of the radius. This causes a deformity of the articulating or joint surface which interferes with the range of motion. Dr. Stanley S. Nemec, an X-ray specialist, testified that the condition was permanent and he did not expect any significant change in the future.

Dr. Alex Harell, an orthopedist, testified that after the cast was taken off there was about a ten degree loss of extension, which limitation had increased to thirty-five degrees at the time of trial and flexion of the arm was decreased about ten degrees. The cartilage or gristle that covered the bone was badly injured at the time the bone was broken, which explains the progressive loss of motion in plaintiff's elbow. The condition is permanent and there is reason to believe that it may get worse. There was no testimony that plaintiff would be unable to do the type of work he had been accustomed to doing, although Dr. Harell testified that anyone hiring the plaintiff to do manual labor in heavy industry or in a hazardous occupation would be "buying himself a potential headache." There is no substantial evidence that plaintiff's earning power in the line of work he has been doing has been diminished.

There is, of course, no precise gauge by which to measure the amount which the plaintiff is entitled to recover. We have examined the recent cases cited by the parties, as well as others. We are constrained to believe that the award of $15,000 is beyond the realm of reasonable compensation as established by previous decisions of this court for injuries of this general nature.

Plaintiff cites the case of Brandt v. Thompson, Mo., 252 S.W.2d 339, in which a woman 26 years old had injuries to her left arm resulting in a one-third loss of flexion and a one-third loss of extension. The remaining motion of the arm was painful because of grating due to roughness and traumatic arthritis of the elbow. The arm was somewhat atrophied and there was diminution of strength and gripping power. In addition she had suffered female disorders. Her salary was $245 a month and she was off work for nine weeks. A verdict of $20,000 was reduced by the trial court to $12,500 and was permitted to stand in that amount. While the pecuniary damages are greater, we do not consider the injuries in the case at bar to be as serious or as disabling as those in the Brandt case.

Plaintiff also cites Francis v. Terminal R. Ass'n of St. Louis, 354 Mo. 1232, 193 S.W. 2d 909, in which a $40,000 judgment was reduced to $25,000. The plaintiff, 38 years old and a pipe fitter's helper doing manual labor, suffered a fracture of the left humerus which healed with a variation in alignment. In addition there was a fractured right clavicle with shortening, a separation of the acromioclavicular joint and also injury to the radial nerve. This case is differentiated by its more severe and disabling injuries and the fact that after the accident the plaintiff could do only light work.

Among other cases we have taken into consideration are: Lonnecker v. Borris, Mo., 245 S.W.2d 53; Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 212 S.W.2d 420; Jones v. Thompson, 353 Mo. 730, 184 S.W.2d 407; Wellinger v. Terminal R. Ass'n of St. Louis, 353 Mo. 670, 183 S.W.2d 908; Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101.

In the Lonnecker case a 69 year old woman had a fracture of her right wrist which was set improperly and a limitation of motion of 35 to 40 per cent resulted. She claimed a wage loss of $8,900. A verdict of

$12,500 was reduced to $10,000. In Schonlau an $18,000 verdict was reduced to $12,000 where plaintiff, 50 years old, earning $38 per week, suffered fractures of both wrists. The fracture in the left wrist did not unite and deformity and angulation resulted in the right wrist. The left hand, wrist and forearm suffered disability up to 40 per cent and the right from 25 to 75 per cent. In Jones v. Thompson, plaintiff, a mechanic 41 years of age, earning as much as $75 per week, lost 90 per cent of the use of his left hand and could not in the future follow his occupation as a machinist. Verdict was reduced by $6,000 to $12,521. In Wellinger v. Terminal R. Ass'n, damages for extremely painful and disabling injuries to the plaintiff's right arm, shoulder, neck and back were reduced from $15,000 to $10,000 where the wage loss was $4,676. In the Darlington case a $10,000 verdict for a comminuted fracture of surgical neck of humerus, adhesions in shoulder, elbow and wrist, which required treatment over a period of seven months, and impairment of motion in forearm and shoulder, was reduced to $8,000.

In Reeves v. Thompson, 357 Mo. 847, 211 S.W.2d 23, 30, an award of $22,500 for loss by a 27 year old man of right arm at the elbow and additional injuries requiring a change of employment was reduced to $15,000. Plaintiff's impaired arm is considerably better than no arm. See 184 S.W.2d loc. cit. 411, for a further collection of cases involving the loss of the use of a hand or arm.

Considering all the factors we believe that a remittitur in the sum of $3,000 is necessary to make the award comply with reasonable standards of uniformity. If plaintiff will enter a voluntary remittitur of $3,000 within fifteen days, the judgment will stand affirmed for $12,000 as of the date of its original entry; otherwise, the judgment is reversed and the cause remanded.

All concur.