**Esther L. MOSS, Respondent,**

v.

**Ernest COURTAWAY, Defendant-Appellant,**

and

**Irwin F. Nelle, Jr., Defendant.**

**No. 51445.**

Supreme Court of Missouri,
Division No. 2.

March 14, 1966.

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for respondent.

Schwartz & Ely, Robert C. Ely, St. Louis, for Ernest Courtaway, defendant-appellant.

STOCKARD, Commissioner.

In this suit for personal injuries resulting from a rear end automobile collision the jury verdict was for plaintiff and

against defendant Ernest Courtaway in the amount of $20,000, and it was in favor of defendant Irwin F. Nelle, Jr. Plaintiff appealed from the judgment in favor of Nelle, but subsequently dismissed her appeal. Courtaway, hereafter referred to as defendant, appealed from the judgment entered against him.

Plaintiff drove her 1953 Ford from the Bank of Pevely located on Highway 61–67 northward toward the intersection with Maple Lane. The distance from the bank to that intersection was approximately 262 feet, and when she had traveled about one half that distance she turned into the inside northbound lane preparing to make a left turn. She stopped, turned on her left turn signal, and waited for southbound traffic to clear. Plaintiff testified that while stopped she looked into her rearview mirror and saw defendant's automobile approaching in her lane, and that it was then "approaching the curve," which otherwise was shown to be about 1,000 feet away. While still stopped, her automobile was struck in the rear by defendant's automobile, and propelled across into the southbound lanes where it was then struck by a truck operated by Nelle.

Defendant testified that he was driving northward on Highway 61–67 at approximately 50 miles an hour. When at the curve south of the Maple Lane intersection he started to pass a truck, and when he thought he had passed the truck he looked into his rearview mirror but did not see it. He then "looked back in front" and "at that time was when [he] saw the car" of plaintiff. He later testified on cross-examination that after he looked in his rearview mirror he looked out of the side window of his automobile and saw the truck to his right, and it was after this that he "looked back" to the front and first saw plaintiff's automobile. At that time he was approximately in front of the Bank of Pevely, but he did not know if plaintiff was then stopped or if she was at the intersection. Defendant made a "hard" application of

his brakes and his automobile started to slide on the wet pavement. He "eased off" on the brakes to gain control of his automobile, and again applied his brakes and slowed as much as possible, and tried to turn right behind the truck but the left front of his automobile struck the right rear of plaintiff's automobile.

Irwin F. Nelle, Jr., was operating his truck southward on Highway 67–61 in the outside lane. North of the intersection of the highway with Maple Lane was a viaduct, the south end of which was 443 feet north of the intersection. When Nelle was at the north end of the viaduct, its length not being shown, he saw the automobiles of both plaintiff and defendant. Plaintiff "was beginning to pull out of the Pevely Bank and she pulled out there over into the left hand lane and headed down towards Maple Lane or the intersection." Defendant's automobile was "on the turn coming around the pickup truck * * * on his side of the road." He further testified that plaintiff "pulled up there and stopped at the intersection," and at that time he was "about half way between the bridge and the road that turned off to the left." When defendant's automobile struck that of plaintiff it was propelled into the path of Nelle's truck.

■ Defendant's first point is that plaintiff's verdict directing instruction, based on the rear end collision doctrine, was prejudicially erroneous because it failed to hypothesize "the length of time that plaintiff's automobile was stopped," citing only Doggendorf v. St. Louis Public Service Co., Mo.App., 333 S.W.2d 302. We note that if the judgment is reversed and a new trial awarded for this or any other reason, on a new trial a submission on the rear end collision doctrine would be pursuant to MAI 17.16, and a hypothesization of the length of time plaintiff's automobile was stopped would not be required. We note also that defendant did not plead contributory negligence on the part of plaintiff and no such instruction was asked for

or given. Neither did defendant submit in an instruction his version of the facts as presenting a factual situation which would authorize a jury to find no negligence on his part.

Since defendant relies only on Doggendorf v. St. Louis Public Service Company, supra, we shall examine it. It was there held that in a case in which the rear end collision doctrine is submitted and "where the foremost vehicle is at rest, but the length of time it has been at rest is in dispute, then it is not sufficient to merely hypothesize that the defendant's car ran into the rear of plaintiff's car while it was stopped," but the "length of time it had been stopped before the collision occurred" was an essential element of plaintiff's instruction. Defendant's evidence in the Doggendorf case would have authorized a finding that plaintiff's automobile swerved directly into the path of defendant's streetcar and was brought to a sudden stop so that in the time and distance available the streetcar could not have been stopped before the collision. We cannot determine from the opinion whether defendant submitted this factual situation as either constituting contributory negligence or authorizing a finding of no negligence on the part of defendant. The above rule of the Doggendorf case apparently was deemed necessary because "As plaintiff's verdict-directing instruction was drawn, it authorized the jury to find in favor of plaintiff even if they discredited all the evidence offered by him, and believed the defendant's evidence." This, we believe was the real basis for the Doggendorf opinion.

■ In this case, even if the jury discounted plaintiff's version of the collision and believed defendant's evidence, plaintiff was entitled to the rear end collision submission as made. Defendant did not testify that plaintiff did anything which would have exonerated him from negligence under the circumstances. There was no evidence of sudden swerving or stopping. At most, defendant's evidence authorized a finding that he did not timely see plaintiff's automobile ahead of him either stopped or coming to a stop because he was looking someplace else. The jury was entitled to find that this was negligence under plaintiff's submission. Without further discussion of the Doggendorf case, we hold that by reference to and reliance on it alone defendant has not demonstrated that plaintiff's verdict directing instruction submitting the rear end collision doctrine was prejudicially erroneous.

Defendant's remaining point is that the verdict, in the amount of $20,000, is excessive and that this court should order a remittitur.

■ Defendant's motion for new trial was not filed until after the trial judge who heard the evidence had gone out of office. The new trial judge did not rule on the motion for new trial, and after ninety days it was deemed denied by operation of Civil Rule 78.04, V.A.M.R. In our review of the issue of the excessiveness of the verdict we review the evidence de novo, but in this case there is no issue of whether deference should be given to the opportunity of the trial court to hear the testimony and to observe plaintiff throughout the trial.

At the time of trial plaintiff was 46 years of age and married. When she was ten years of age she had acute osteomyelitis in her left leg, and as a result the leg was shortened about three inches. It was weaker than her right leg, and she had some limp. However, she wore a raised shoe and she could run and go up and down stairs. The condition of her leg did not limit her activities to any extent. As a result of her automobile being struck by that of defendant, and by the automobile of Nelle, she sustained "a fracture of the lower end of her femur," at the knee, and "it broke into the knee." There were two fracture lines, resulting in a "major fragment" and "two smaller fragments." This was described as "a fracture of the inter-

condylar as well as the supracondylar." There was "some separation, some mild separation," but no displacement. Plaintiff was first taken to a nearby hospital, and then to the Missouri Baptist Hospital in St. Louis. There "a closed reduction" was made while plaintiff was under a general anesthetic and a "hip cast" was put on which extended "from her toes on her left leg up to the upper thigh around her pelvis and up to the lower margin of her ribs." Plaintiff wore this cast, and its replacement, for eight weeks and two days, and she was hospitalized for ten weeks. The hospital records contain 153 entries showing the administration of demerol or darvon for relief of pain. Dr. William R. Bohne, a recognized orthopedic surgeon who treated plaintiff, testified that as a result of the fractures there was "angulation" which "throws a joint out of kilter," and which resulted in "a little forward bowing" and "the knee doesn't work properly as if it were straight out." The doctor also testified that the bowing or angulation would cause a disturbance in the weight-bearing angle of her knee "because her condyles do not lay flush on the tibial condyles," that as the result of the automobile collisions and the fractures plaintiff received an additional shortening of her leg of one-quarter to one-half an inch, some small loss of flexion in her knee, and some deformity of the femur, all of which conditions are permanent. Following her release from the hospital plaintiff used crutches until September 1963, which was four to four and one-half months after the accident. Plaintiff testified that she cannot go up and down steps unless there is a handrail, that she cannot stand while doing such household duties as ironing, that she has had constant pain since the accident varying in intensity, and her ability to sleep has been affected. Neighbors of plaintiff testified to the effect that she is not as active as before the accident, and that her limp is more noticeable. There also was testimony from neighbors that she is no longer active in club and church affairs, she cries a lot, is not able to walk about the neighborhood as she previously did, and that she goes around her house to avoid climbing four or five steps at the back of her house. There was no medical or hospital expense submitted as special damages in this case, and plaintiff suffered no loss of income.

Defendant cites and relies on Bowyer v. Te-Co, Inc., Mo., 310 S.W.2d 892; Westfall v. Mossinghoff, J. & Co., Mo., 345 S.W.2d 148; Salzwedel v. Vassil, Mo.App., 351 S.W.2d 829; and Ciardullo v. Terminal Railroad Association of St. Louis, Mo., 289 S.W.2d 96, 60 A.L.R.2d 516, in support of his contention that a "substantial remittitur should be ordered." Each of these cases has been read carefully. In each case a remittitur was ordered, but none present precisely the factual situation here. Plaintiff cites and relies on Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 238 S.W.2d 674; Scneder v. Wabash Railroad Company, Mo., 272 S.W.2d 198; De Mariano v. St. Louis Public Service Company, Mo., 340 S.W.2d 735; Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 361; and Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353, to support her contention that the verdict is not excessive. She also cites the Douglas and Cruce cases, and Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, in support of her contention that in determining whether a verdict is excessive we should consider the decline in the purchasing power of the dollar.

We see no occasion to restate the applicable rules concerning the use of remittiturs in this state. See Myers v. Karchmer, Mo., 313 S.W.2d 697; Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487; Moore v. Ready Mixed Concrete Company, supra. It has been said, and correctly so, that there is no accurate scale for measuring the money value of the damages sustained for personal injuries. Van Campen v. St. Louis-San Francisco Ry. Co., 358 Mo. 655, 216 S.W.2d 443, 449. However, upon

**164**

consideration of all the facts of this case and upon comparison of the verdict and the injuries sustained to those in the cited and other cases, we necessarily reach the conclusion that while the amount of the verdict may be said to be liberal, it is not excessive in the sense which would justify the exercise by this court of its discretion to order a remittitur.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.