Larry J. BERRY and Phyllis Berry,
Respondents,

v.

Kenneth Driggs RIDGEWAY, Appellant.

No. 52266.

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Charles H. Howard, Hendren & Andrae,
P. Pierre Dominique, Jefferson City, for
respondents.

Tweedie Fisher, Jefferson City, for appellant.

PRITCHARD, Commissioner.

Two questions are presented: (1)
Whether the trial court erred in permitting
plaintiff, Larry J. Berry, to testify that he
owned the motor vehicle involved in the
accident (for the damage to which plaintiffs recovered a $1,000 judgment) over objection that the title was the best evidence
of ownership; (2) whether the damages,
$40,000, awarded Larry J. Berry for personal injuries are excessive.

Larry J. Berry testified that on July 29,
1965 (the date of the collision), he had a
1960 Pontiac two-door hardtop, a Ventura,
with power steering, power brakes and power radio antenna. The vehicle was in excellent condition. Berry was then asked:

"Q Did you own this automobile?

"A Yes, sir.

MR. FISHER: Now, just a moment.
I didn't have an opportunity to object
before it was answered. The title is the
best evidence.

THE COURT: Well, that may be so,
but he can testify he owns it.

MR. FISHER: I ask his answer be
stricken.

THE COURT: Overruled.

MR. FISHER: And the jury told to
disregard it.

THE COURT: Overruled."

Then on cross-examination of Berry by
counsel for defendant, the following was
elicited:

"Q Now, Mr. Berry, I believe that I'm
quoting you right. This is when I made
that objection, the certificate of owner-

ship was the best evidence. Did you say that you yourself owned the automobile?

"A Well, it was in—the title was in my wife's name and mine.

"Q When you said this originally, on the stand, you didn't mean that only you owned the automobile?

"A No."

On April 13, 1966, during the trial and by leave of court, Count III was filed alleging that plaintiffs were the owners of a 1960 Pontiac automobile, which was damaged as a direct and proximate result of defendant's negligence in the amount of $1,100, for which judgment was prayed.

■ If any error occurred in the overruling of defendant's objection to Berry's direct testimony it was rendered harmless by the fact of the true state of plaintiffs' automobile title (being joint) being brought out by defendant's cross-examination of Berry.

■ Berry was pinned in his car as a result of the collision, with both legs fractured. Prior to the collision, he was in good health, married, with two children, and at the time of trial was 24 years of age. He was hospitalized 29 or 30 days, returning thereafter for treatment as an outpatient. While he was in the hospital he was twice operated upon, with two steel pins being put in his left leg above the ankle. When he was discharged, he wore casts on his legs from the toes to about the middle of his thighs. During all this time he was in pain. He was bedfast or in a wheelchair for six months after he left the hospital, and at the time of trial was using crutches.

The medical testimony is that Dr. Larry B. Klebba, M. D., cared for Berry from July 29 to August 23, 1965, seeing him on the first day (the day of the collision). The left leg above the ankle was doubled under, with the bone protruding through the skin, and a deep laceration through the muscle. There was a comminuted fracture

of the right kneecap, and the right ankle was fractured. In detail, he found that Berry sustained fractures to the left tibia and fibula, left kneecap, left heel bone, left navicular bone. As to the right leg, he found a comminuted fracture of the right kneecap, three separate ankle fractures, and two fractures of the tibia. He also had a large bruise of the left forearm and bruises of the chest. Dr. Klebba first gave Berry sedation, straightened the leg, then took him to surgery where operations were done on the left leg, both kneecaps, placing of wires on the right kneecap and pins in one leg; casts on both legs from midthighs to toes.

Berry was seen by Dr. Fred O. Tietjen, M. D., whose specialty is orthopedics, on August 16, 1965. He testified that Berry's injuries were compound fractures of the left tibia and fibula, multiple closed fracture of the right kneecap, closed fracture of the navicular and calcaneus bones of the left foot, closed fractures between the lower end of the right fibula and fracture of the medial malleolus and a tri-malleolar fracture of the back side of the tibia, and a fracture of the nose. Dr. Tietjen performed a second operation on the left knee, removed a bone fragment therein and reattached the ligament below the left knee by stainless steel wire. There has been satisfactory healing of the wound and fracture. According to Dr. Tietjen, the fractures of the right foot caused it to be a half inch shorter with a higher arch, necessitating the wearing of a different size shoe. Arthritis could be expected in the feet and knees because of injury to the joints, which would never be normal. On April 4, 1966, his examination revealed that Berry had 50% loss of motion of the right knee, 75% to 100% of the usual motions of the right and left ankles. Berry was totally disabled at the time of trial and would remain so for three more months. Considering him as a whole man, he sustained permanent partial disability, being 60% to 70% of the man he was before he was injured.

The medical expenses were: Dr. Klebba $400; hospitalization $1,082; Dr. Bowe $112; pain pills $3; Dr. Tietjen $495; and ambulance $15. It was estimated that future medical expenses would be $200, totaling $2,307. As a life insurance salesman for United Life Assurance Society, Berry drew a weekly advance of $100, without deduction for income taxes or social security taxes. Such advance was to be charged against commissions to be earned. He drew the advance from July 29, 1965 until the date of trial, April 12, 1966, forty-six weeks, totaling about $4,600, which he testified was to be charged against commissions and future commissions. He earned no commissions during the course of his disability after the collision. There was no evidence to show what commissions Berry was earning at the time of his injury so as to determine with some certainty the net amount which would normally be due his employer. In other words, what part of the $4,600 total advance was lost because of Berry being unable to earn commissions. In view of the seriousness and permanency of his injuries, however, the earnings loss need not be considered in affirming this $40,000 award in accordance with the rule of reasonable conformity therewith. Johnson v. Missouri-Kansas-Texas Railroad Company, Mo., 374 S.W.2d 1, 6 [8, 9].

The cases cited by defendant in support of his contention that the verdict is excessive are not precedent for injuries suffered by plaintiff Berry. Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 361, involved a trial court award of $32,500, remitted in this court to $25,000, for a leg injury to an eleven-year-old girl, with no other member or organs of plaintiff being injured (but with two months' hospitalization, emerging therefrom with a permanently damaged and distorted leg and a permanent limp). In Statler v. St. Louis Arena Corporation, Mo., 388 S.W.2d 833, the plaintiff was forty-seven-years old, had $3,000 special damages, one-third permanent partial disability because of a fracture to his left ankle, and with impaired

peripheral-vascular disease of both lower extremities (a condition probably pre-existing), which condition was slightly more severe on the left side. Affirmed, after remittitur of $6,500, was a judgment for $16,000. Kiger v. Terminal Railroad Association of St. Louis, Mo., 311 S.W.2d 5, six years before Berry's injury, affirmed $20,000 after $10,000 remittitur for a temporary compression injury in the cervical vertebrae, with permanent scar tissue in the neck and shoulder muscles, with *probable* partial herniation of a disc in the low back, with prognosis of arthritic changes in some years, to a thirty-year-old plaintiff. A $20,000 award, said to be liberal, was affirmed in Moss v. Courtaway, Mo., 400 S.W.2d 160, for fracture to the left knee of a forty-six-year-old woman, with no medical expenses being submitted, and there was no loss of income. Each of these cases involves injuries to only one limb, with less disability, or the injuries proved are not comparable (as in the Kiger case).

In the 1958 case of Johnson v. Flex-O-Lite Manufacturing Corporation, Mo., 314 S.W.2d 75, a $30,000 award to a thirty-nine-year-old man was affirmed for a comminuted fracture of the right femur and also of the head of the left tibia, both of which required extensive surgery with pins, screws and bolts to hold the parts in place. There was also a severe concussion, with lacerations and contusions over other parts of his body. The permanent disability was set by medical experts at 75%. He was in the hospital on four different occasions for a total of 116 days, with special damages over $4,000, and loss of earnings over $6,000. In Hahn v. Terminal Railroad Association of St. Louis, Mo., 355 S.W.2d 867, there was $25,000 special damages to a forty-five-year-old man who suffered severe injury to his right lower leg, and a $65,000 award (voluntarily remitted $25,000 and in compliance with the trial court's order, a further $10,000, from a $100,000 verdict) was affirmed.

Considering Berry's youth, the extent of his permanent disability, the hospitalization

and operations required, the award is not manifestly excessive, certainly it is not grossly so. See and compare the collected cases for injuries to both lower extremities, 16 A.L.R.2d 3, 254 (Sec. 107), and 2 A.L.R. 2d, Later Case Service, p. 640, covering fracture injuries to both legs.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

EAGER and DONNELLY, JJ., FINCH, P. J., and STUBBS, Special Judge, concur.